Lathrop DOUGLASS

v.

**FIRST NATIONAL REALTY CORPORATION.**

**Appeal of Sidney S. BROWN.**

**No. 73–1137.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 6, 1975.

Decided March 3, 1976.

**121.**  See Part II *supra.*

**122.**  See Part III *supra.*

Mark P. Friedlander, Washington, D. C., for appellant.

No appearance was entered and no brief was filed on behalf of appellee.

Before LEVENTHAL and ROBINSON, Circuit Judges, and OSCAR H. DAVIS,* Judge, United States Court of Claims.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

This appeal brings before us a judgment of the District Court holding appellant in contempt and imposing a fine of $5,000. The event precipitating this ruling was appellant's failure to appear in court responsively to a show cause order. The judgment is attacked on grounds that the order was not properly served on appellant and that the fine assessed against him is excessive. Our examination of the record discloses a substantial evidentiary foundation for the conclusion that appellant had ample knowledge of the order.[1] Our study of the relevant case law reveals, however, that the amount of the fine surpasses the constitutional limit on monetary penalties consequent upon nonjury contempt adjudications against individuals.[2] Accordingly, we adjust the fine to eliminate that difficulty, and affirm the judgment as so modified.

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1970).

1. See Part I *infra*.

2. See Part II *infra*.

## I

Six years ago Lathrop Douglass recovered a judgment against First National Realty Corporation,[3] of which appellant was president.[4] In an effort to realize on the judgment, Douglass attached assets allegedly belonging to First National Realty, including a piece of Maryland land—Parcel M—which First National Realty had theretofore conveyed. For reasons unimportant to the problems at hand, the District Court ruled that the transfer was legally a nullity.

Title to Parcel M was then held by Beltway-Greenbelt Properties, Inc., in which appellant was a principal.[5] On that basis, the District Court entered an order directing appellant to obtain execution and recordation of a deed reconveying Parcel M to First National Realty within fourteen days. When, a month later, appellant had not complied, the court entered an order commanding First National Realty and appellant, as its president, to appear and show cause why they should not be adjudged in contempt.[6]

Appellant did not appear at the time specified in the show cause order.[7] A bench warrant was then issued and executed, and appellant was brought before the District Court later in the day. At a hearing then conducted by the court, sitting without a jury, the inquiries centered on the charges set forth in the show cause order, and, as well, the lack of a timely appearance by appellant in response to that order.[8] Appellant was represented by counsel at the hearing,[9] and testified freely in his own behalf.

At the conclusion of the hearing, the District Court adjudged appellant in contempt and fined him $5,000 for his failure to appear earlier. The court also specified an increasing scale of monetary penalties, and a possible term of imprisonment ultimately, to follow in the event of appellant's continued noncompliance with the court's previous order to effect the reconveyance of Parcel M.[10] This appeal is from the order effectuating that action. In this court, appellant questions only the method by which the show cause order was served and the $5,000 fine which the District Court levied,[11] and we limit our review accordingly.[12]

3. See *Douglass v. First Nat'l Realty Corp.*, 141 U.S.App.D.C. 233, 437 F.2d 666 (1970).

4. The litigation has a rather extensive history. We detail only the facts pertinent to the questions presented on this appeal.

5. Appellant was president, and both he and his wife were 49.5% stockholders. The remaining 1% of the stock was held by appellant's secretary.

6. The show cause order also extended its call to two additional motions by Douglass to hold First National Realty and appellant in contempt.

7. First National Realty appeared by its attorney, who later was to also represent appellant at the hearing.

8. The jurisdictional predicate for the proceeding was 18 U.S.C. § 401 (1970), in relevant part providing:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as— . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Compare *In re Gates*, 156 U.S.App.D.C. 88, 478 F.2d 998 (1973); *In re Niblack*, 155 U.S.App. D.C. 174, 476 F.2d 930 (1973).

9. See note 7 *supra*.

10. The order specified penalties of $20,000, $45,000, $80,000 and $125,000 for daily failures to comply over a four-day period, at the end of which appellant, if still in default, was to reappear and show cause why he should not be incarcerated.

11. No party other than appellant has appeared on the appeal. We heretofore issued orders calling upon Douglass and the United States Attorney to show cause why Fed.R.App.P. 31(c) should not be invoked. Douglass' position was that he was not involved because he did not press for a contempt adjudication for appellant's failure to appear, and the United States Attorney explained that his office did not represent, nor was it requested to represent, anyone in interest.

12. Compare, *e. g.*, *United States v. Belt*, 169 U.S.App.D.C. 1, 3 n.3, 514 F.2d 837, 839 n.3 (*en banc* 1975); *United States v. Toy*, 157 U.S.App. D.C. 152, 154–155, 482 F.2d 741, 743–744 (1973); *United States v. Holiday*, 157 U.S.App.

We find that appellant's first challenge cannot survive the legal effect of the evidence adduced at the hearing. A copy of the show cause order had been served on First National Realty, and another copy had been posted on the front door of appellant's residence when the marshal's knock went unanswered. Appellant's sole explanation is that he never saw the order; that during the period following posting, he invariably entered the house through the adjoining garage, and never had occasion to look at the front door. We are satisfied, however, that in light of other circumstances proved at the hearing, the District Court was not obliged to accept that claim.

The evidence made it plain that First National Realty's attorney knew of the show cause order and communicated the essence of the order to appellant. Several days before the hearing, counsel asked appellant whether he had been served, and utilized the opportunity to inform appellant of the hearing that was to ensue. Counsel also sought, apparently unsuccessfully, to arrange a meeting with appellant two days before the date of the hearing. The evidence also left room for an inference that when the marshals came for appellant with the arrest warrant, he tried to run away.[13] Indeed, appellant testified that he was told that there was to be a hearing, but that he was under the impression that he did not have to be present.

To be sure, one cannot be contemptuous of a court order unless he has knowledge of it.[14] But the evidence left no doubt that appellant was made aware of the show cause order and of the hearing scheduled thereon. Moreover, the evidence fully warranted the inference that appellant—himself a lawyer—was at no loss to recognize his obligation to respond thereto. In this milieu, one might discern a hollow ring to appellant's protestation that he never actually saw his copy of the order.[15] At least the District Court was not persuaded,[16] and we think the evidence sustains the conclusion it reached.

## II

Moving on to appellant's contention that the fine imposed by the District Court was too high, we pause briefly to recount the salient facts. The delinquency for which the fine was levied was appellant's failure to appear obediently to the show cause order. The evidence leading to the adjudication of contempt on that account was heard and appraised without a jury. The amount of the fine was $5,000. The question thus posed is whether a penalty of that magnitude was constitutionally permissible without trial by a jury.

Since civil contempt engenders no right to a jury trial,[17] our initial assignment is to determine whether the proceeding culminating in the fine was civil or criminal in

D.C. 140, 142 n.6, 482 F.2d 729, 731 n.6 (1973); *United States v. Johnson,* 155 U.S.App.D.C. 28, 29, 475 F.2d 1297, 1298 (1973).

13. Appellant admitted that on that occasion he ran out of the door, but said that he had an appointment nearby and was trying to get out of rain that was then falling.

14. *E. g., United States v. Hall,* 198 F.2d 726, 729, 34 A.L.R.2d 1088 (2d Cir. 1952), cert. denied, 345 U.S. 905, 75 S.Ct. 641, 97 L.Ed. 1341 (1953); *Kelton v. United States,* 294 Fed. 491, 494–495 (3d Cir.), cert. denied, 264 U.S. 590, 44 S.Ct. 403, 68 L.Ed. 864 (1923); *Yates v. United States,* 316 F.2d 718, 723 (10th Cir. 1963).

15. If appellant was aware of the purport of the order to show cause, it matters not that he had not actually seen the posted copy. See cases cited *supra* note 14.

16. The District Court expressly found that "proper service of the Order to Show Cause was made on [appellant] by the U.S. Marshal" and that appellant was "in wilful and wanton contempt of" that order. App. 6. We read these together as a finding that appellant had actual knowledge of the time and purpose of the hearing, from the posted copy of the order or otherwise, and was conscious of a duty to respond. See note 15 *supra.*

17. *Cheff v. Schnackenberg,* 384 U.S. 373, 377, 86 S.Ct. 1523, 1524, 16 L.Ed.2d 629, 632 (1966); *Shillitani v. United States,* 384 U.S. 364, 365, 86 S.Ct. 1531, 1533, 16 L.Ed.2d 622, 624 (1966); *Mitchell v. Fiore,* 470 F.2d 1149, 1153 (3d Cir. 1972), cert. denied, 411 U.S. 938, 93 S.Ct. 1899, 36 L.Ed.2d 399 (1973).

character.[18] The pivotal inquiry in this regard, the Supreme Court instructs, is "what does the court primarily seek to accomplish by imposing sentence?"[19] If the purpose is to coerce compliance, the penalty is civil;[20] if the goal is punishment for past disobedience, the exaction is criminal.[21]

In the case at bar, the District Court's objective is manifest. At the conclusion of the hearing, the court announced, "I find [appellant] in contempt of Court and fine him $5,000 for failure to appear this morning."[22] Similarly, the judgment of contempt specified that appellant "shall pay a penalty of five thousand dollars ($5,000.00) for contempt of the" show cause order,[23] and directed the fine to be paid "by check to the benefit of the Treasury of the United States."[24] There was no provision affording appellant an opportunity to purge himself and thereby avoid the payment.[25] These characteristics of the fine contrasted sharply with the distinct provisions of the judgment directing other payments, expressly denominated "civil penalties in terrorem,"[26] to be made "into the Registry of this Court subject to further order of the Court"[27] in the event that appellant persisted in noncompliance with the court's prior order to effect a reconveyance of Parcel M to First National Realty.[28]

Beyond peradventure, then, the adjudication of which appellant complains was wholly criminal in nature.[29] It follows

**18.** It is settled that a criminal contempt may emanate from a purely civil proceeding. See, e. g., *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *United States v. UMW,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

**19.** *Shillitani v. United States, supra* note 17, 384 U.S. at 370, 86 S.Ct. at 1535, 16 L.Ed. at 627. See also *Penfield Co. v. SEC,* 330 U.S. 585, 590, 67 S.Ct. 918, 921, 91 L.Ed. 1117, 1122–1123 (1947); *Lamb v. Cramer,* 285 U.S. 217, 220–221, 52 S.Ct. 315, 316–317, 76 L.Ed. 715, 719–720 (1932); *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797, 806 (1911).

**20.** *Shillitani v. United States, supra* note 17, 384 U.S. at 368–371, 86 S.Ct. at 1534–1536, 16 L.Ed.2d at 626–627; *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599, 604 (1949); *Penfield Co. v. SEC, supra* note 19, 330 U.S. at 590, 67 S.Ct. at 921, 91 L.Ed. at 1122–1123; *Nye v. United States,* 313 U.S. 33, 42–43, 61 S.Ct. 810, 812–813, 85 L.Ed. 1172, 1177–1178 (1941); *McCrone v. United States,* 307 U.S. 61, 64–65, 59 S.Ct. 685, 686–687, 83 L.Ed. 1108, 1110–1111 (1939); *Oriel v. Russell,* 278 U.S. 358, 363, 49 S.Ct. 173, 174, 73 L.Ed. 419, 424 (1929).

**21.** *Cheff v. Schnackenberg, supra* note 17, 384 U.S. at 377, 86 S.Ct. at 1524, 16 L.Ed.2d at 632; *Pendergast v. United States,* 317 U.S. 412, 417, 63 S.Ct. 268, 270, 87 L.Ed. 368, 372 (1943); *Nye v. United States, supra* note 20, 313 U.S. at 42–43, 61 S.Ct. at 812–813, 85 L.Ed. at 1177–1178. See also the cases cited supra note 20 and *infra* notes 32–35. This conclusion is not affected by the fact that in other respects the contempt proceeding before the District Court was civil in nature. "Common sense would recognize that conduct can amount to both civil and criminal contempt. The same acts may justify a court in resorting to coercive and to punitive measures. Disposing of both aspects of the contempt in a single proceeding would seem at least a convenient practice . . . [Fed.R.Crim.P.] 42(b), while demanding fair notice and recognition of the criminal aspects of the case, contains nothing precluding a simultaneous disposition of the remedial aspects of the contempt tried. Even if it be the better practice to try criminal contempt alone and to avoid obscuring the defendant's privileges in any manner, a mingling of civil and criminal proceedings must nevertheless be shown to result in substantial prejudice before a reversal will be required." *United States v. UMW, supra* note 18, 330 U.S. at 298–300, 67 S.Ct. at 698–699, 91 L.Ed. at 915–916 (footnotes omitted). See also *Mitchell v. Fiore, supra* note 17, 470 F.2d at 1153.

**22.** App. 27.

**23.** App. 6.

**24.** App. 7.

**25.** Compare *Shillitani v. United States, supra* note 17, 384 U.S. at 368–370, 86 S.Ct. at 1534–1535, 16 L.Ed.2d at 626–627; *Maggio v. Zeitz,* 333 U.S. 56, 67–68, 68 S.Ct. 401, 407, 92 L.Ed. 476, 486 (1948); *Lance v. Plummer,* 353 F.2d 585, 592 (5th Cir. 1965), cert. denied, 384 U.S. 929, 86 S.Ct. 1445, 16 L.Ed.2d 532 (1966).

**26.** App. 7.

**27.** App. 7.

**28.** See note 10 *supra.*

**29.** See cases cited *supra* note 21 and *infra* notes 32–35.

that, in considering whether the jury-trial guaranties of the Constitution [30] had a legitimate role in this case,[31] we must treat appellant's contempt as we do any other criminal offense.[32] This does not mean, however, that a charge of criminal contempt invokes the right to jury trial irrespective of the penalty involved.[33] That right extends broadly to "serious" crimes,[34] but not at all to "petty" offenses,[35] and to criminal contempts precisely by that measure.[36] Thus the next problem confronting us is which of these two categories embraces appellant's contempt.[37]

**30.** "The trial of all Crimes, except in Cases of Impeachment, shall be by Jury . . . ." U.S.Const., art. III, § 2; and "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." *Id.* amend. 6.

**31.** In a line of cases extending over a 68-year period to 1958, the Supreme Court had consistently held that criminal contempt prosecutions were outside the jury-trial guaranties. See the cases collected in *Bloom v. Illinois,* 391 U.S. 194, 196, 88 S.Ct. 1477, 1478–1479, 20 L.Ed.2d 522, 525 (1968); *Cheff v. Schnackenberg, supra* note 17, 384 U.S. at 382 n.2, 86 S.Ct. at 1526 n.2, 16 L.Ed.2d at 635 n.2; *United States v. Barnett,* 376 U.S. 681, 694 n.12, 84 S.Ct. 984, 991 n.12, 12 L.Ed.2d 23, 32 n.12 (1964); *Green v. United States,* 356 U.S. 165, 191 n.2, 78 S.Ct. 632, 635 n.2, 2 L.Ed.2d 672, 692 n.2 (1958). For the evolution of the present constitutional interpretation, see *Bloom v. Illinois, supra,* 391 U.S. at 195–197, 88 S.Ct. at 1478–1480, 20 L.Ed.2d at 525–526.

**32.** *Codispoti v. Pennsylvania,* 418 U.S. 506, 516, 94 S.Ct. 2687, 2693, 41 L.Ed.2d 912, 921 (1974); *Taylor v. Hayes,* 418 U.S. 488, 495, 94 S.Ct. 2697, 2702, 41 L.Ed.2d 897, 905 (1974); *Frank v. United States,* 395 U.S. 147, 148, 89 S.Ct. 1503, 1504–1505, 23 L.Ed.2d 162, 166 (1969); *Dyke v. Taylor Implement Mfg. Co.,* 391 U.S. 216, 219–220, 88 S.Ct. 1472, 1474–1475, 20 L.Ed.2d 538, 542 (1968); *Bloom v. Illinois, supra* note 31, U.S. at 196–210, 88 S.Ct. at 1479–1481, 20 L.Ed.2d at 525–533. "For purposes of the right to trial by jury, criminal contempt is treated just like all other criminal offenses." *Frank v. United States, supra,* 395 U.S. at 148, 89 S.Ct. at 1505, 23 L.Ed.2d at 166.

**33.** *Muniz v. Hoffman,* 422 U.S. 454, 476, 95 S.Ct. 2178, 2190, 45 L.Ed.2d 319, 334–335 (1975); *Codispoti v. Pennsylvania, supra* note 32, 418 U.S. at 512, 94 S.Ct. at 2691, 41 L.Ed.2d at 919; *Taylor v. Hayes, supra* note 32, 418 U.S. at 495, 496, 94 S.Ct. at 2701–2702, 41 L.Ed.2d at 905–906; *Dyke v. Taylor Implement Mfg. Co., supra* note 32, 391 U.S. 219, 88 S.Ct. at 1474, 20 L.Ed.2d at 542; *Bloom v. Illinois, supra* note 31, 391 U.S. at 211, 88 S.Ct. at 1486, 20 L.Ed.2d at 534; *Cheff v. Schnackenberg, supra* note 17, 384 U.S. at 379, 86 S.Ct. at 1525–1526, 16 L.Ed.2d at 633.

**34.** *Muniz v. Hoffman, supra* note 33, 422 U.S. at 476, 95 S.Ct. at 2190, 45 L.Ed.2d at 334–335; *Codispoti v. Pennsylvania, supra* note 32, 418 U.S. at 511, 94 S.Ct. at 2691, 41 L.Ed.2d at 919; *Frank v. United States, supra* note 32, 395 U.S. at 148, 89 S.Ct. at 1504–1505, 23 L.Ed.2d at 166; *Bloom v. Illinois, supra* note 31, 391 U.S. at 197–210, 88 S.Ct. at 1479–1487, 20 L.Ed.2d at 526–533; *Cheff v. Schnackenberg, supra* note 17, 384 U.S. at 379–380, 86 S.Ct. at 1525–1526, 16 L.Ed.2d at 633–634; *Callan v. Wilson,* 127 U.S. 540, 549, 86 S.Ct. 1301, 1303, 32 L.Ed. 223, 226 (1888).

**35.** *Muniz v. Hoffman, supra* note 33, 422 U.S. at 475–476, 95 S.Ct. at 2190, 45 L.Ed.2d at 334; *Codispoti v. Pennsylvania, supra* note 32, 418 U.S. at 511, 94 S.Ct. at 2691, 41 L.Ed.2d at 919; *Baldwin v. New York,* 399 U.S. 66, 68, 90 S.Ct. 1886, 1887, 26 L.Ed.2d 437, 440 (1970); *Frank v. United States, supra* note 32, 395 U.S. at 148, 89 S.Ct. at 1504–1505, 23 L.Ed.2d at 166; *Dyke v. Taylor Implement Mfg. Co., supra* note 32, 391 U.S. at 219, 88 S.Ct. at 1474, 20 L.Ed.2d at 542; *Bloom v. Illinois, supra* note 31, 391 U.S. at 196–198, 210, 88 S.Ct. at 1479–1481, 1486, 20 L.Ed.2d at 525–526, 533; *Duncan v. Louisiana,* 391 U.S. 145, 159, 160, 88 S.Ct. 1444, 1452–1453, 20 L.Ed.2d 491, 502 (1968); *District of Columbia v. Clawans,* 300 U.S. 617, 624–625, 57 S.Ct. 660, 661–662, 81 L.Ed. 843, 845–846 (1937); *District of Columbia v. Colts,* 282 U.S. 63, 72–73, 51 S.Ct. 52, 53, 75 L.Ed. 177, 198–217; *Schick v. United States,* 195 U.S. 65, 68–70, 24 S.Ct. 826, 827–828, 49 L.Ed. 99, 101–102 (1904); *Natal v. Louisiana,* 139 U.S. 621, 624, 11 S.Ct. 636, 637, 35 L.Ed. 288, 289 (1891).

**36.** *Muniz v. Hoffman, supra* note 33, 422 U.S. at 475–476, 95 S.Ct. at 2190, 45 L.Ed.2d at 334–335; *Codispoti v. Pennsylvania, supra* note 32, 418 U.S. at 511, 94 S.Ct. at 2691, 41 L.Ed.2d at 919; *Frank v. United States, supra* note 32, 395 U.S. at 148, 89 S.Ct. at 1504–1505, 23 L.Ed.2d at 166; *Dyke v. Taylor Implement Mfg. Co., supra* note 32, 391 U.S. at 219, 88 S.Ct. at 1474, 20 L.Ed.2d at 542; *Bloom v. Illinois, supra* note 31, 391 U.S. at 196–210, 88 S.Ct. at 1479–1487, 20 L.Ed.2d at 525–533.

**37.** In the decided cases, many originating in nonfederal jurisdictions, the contemnor expressly demanded a jury trial. See cases cited *supra* notes 32–35. The record reflects no such demand in the instant case, but that, we think does not alter the problem. See *United States*

The classification of a particular offense as serious or petty is normally to be accomplished by looking to the maximum punishment authorized therefor.[38] That is because "[i]n such case, the legislature has included within the definition of the crime itself a judgment about the seriousness of the offense."[39] For contempts of the type committed by appellant, however, Congress has set no ceiling on punishment.[40] And for jury-trial purposes in situations of that kind, the Supreme Court has formulated the applicable test: "When the legislature

has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty which may be imposed, we are to look to the penalty actually imposed as the best evidence of the seriousness of the offense."[41] Here, we reiterate, the penalty exacted was a $5,000 fine, and our remaining burden is to determine whether it best evidences a serious or a petty transgression.

This is not a simple task.[42] The Court has frequently held that the maximum term of imprisonment imposable in non-jury criminal proceedings is six months.[43]

v. R. L. Polk & Co., 438 F.2d 377, 378 (6th Cir. 1971). In the federal courts, the right to a jury trial persists unless and until the defendant appropriately waives it. Fed.R.Crim.P. 23(a). We are mindful that we have held that an oral waiver by defense counsel in open court suffices if the defendant by his conduct can be said to have ratified the waiver and thus made it his personal act. Hensley v. United States, 108 U.S.App.D.C. 242, 244–246, 281 F.2d 605, 607–609 (1960). See also United States v. McCurdy, 450 F.2d 282, 283 (9th Cir. 1971). Nonetheless, there must be an express, positive waiver—as distinguished from mere failure to request a jury. We find nothing in the record on this appeal indicating that there was any such waiver, written or oral. Compare United States v. Davidson, 477 F.2d 136, 137 (6th Cir. 1973).

**38.** Codispoti v. Pennsylvania, supra note 32, 418 U.S. at 511, 94 S.Ct. at 2691, 41 L.Ed.2d at 919; Baldwin v. New York, supra note 35, 399 U.S. at 68, 90 S.Ct. at 1887, 26 L.Ed.2d at 440; Duncan v. Louisiana, supra note 35, 391 U.S. at 159–160, 88 S.Ct. at 1452–1453, 20 L.Ed.2d at 502. "In ordinary criminal prosecutions, the severity of the penalty authorized, not the penalty actually imposed, is the relevant criterion. In such cases, the legislature has included within the definition of the crime itself a judgment about the seriousness of the offense. . . . But a person may be found in contempt of court for a great many different types of offenses, ranging from disrespect for the court to acts otherwise criminal. Congress, perhaps in recognition of the scope of criminal contempt, has authorized courts to impose penalties but has not placed any specific limits on their discretion; it has not categorized contempts as 'serious' or 'petty.' . . . Accordingly, this Court has held that in prosecutions for criminal contempt where no maximum penalty is authorized, the severity of the penalty actually imposed is the best indication of the seriousness of the particular offense." Frank v. United States, supra note 32, 395 U.S. at 149, 89 S.Ct. at 1505–1506, 23 L.Ed.2d at 166 (citation and footnote omitted).

**39.** Frank v. United States, supra note 32, 395 U.S. at 149, 89 S.Ct. at 1505–1506, 23 L.Ed.2d at 166, quoted supra note 38. See also Duncan v. Louisiana, supra note 35, 391 U.S. at 162, 88 S.Ct. at 1454, 20 L.Ed.2d at 503.

**40.** Frank v. United States, supra note 32, 395 U.S. at 149, 89 S.Ct. at 1505–1506, 23 L.Ed.2d at 166, quoted supra note 38. See also note 8 supra.

**41.** Bloom v. Illinois, supra note 31, 391 U.S. at 211, 88 S.Ct. at 1487, 20 L.Ed.2d at 534. See also Codispoti v. Pennsylvania, supra note 32, 418 U.S. at 511, 94 S.Ct. at 2691, 41 L.Ed.2d at 919; Taylor v. Hayes, supra note 32, 418 U.S. at 495, 94 S.Ct. at 2701, 41 L.Ed.2d at 906; Frank v. United States, supra note 32, 395 U.S. at 148, 149–150, 89 S.Ct. at 1505–1506, 23 L.Ed.2d at 166; Dyke v. Taylor Implement Mfg. Co., supra note 32, 391 U.S. at 219–220, 88 S.Ct. at 1474–1475, 20 L.Ed.2d at 542.

**42.** See Dyke v. Taylor· Implement Mfg. Co., supra note 32, 391 U.S. at 220, 88 S.Ct. at 1475, 20 L.Ed.2d at 542; Bloom v. Illinois, supra note 31, 391 U.S. at 211, 88 S.Ct. at 1486, 20 L.Ed.2d at 534. See also Baldwin v. New York, supra note 35, 399 U.S. at 68, 90 S.Ct. at 1887, 26 L.Ed.2d at 440; Duncan v. Louisiana, supra note 35, 391 U.S. at 160, 88 S.Ct. at 1453, 20 L.Ed.2d at 502.

**43.** Muniz v. Hoffman, supra note 33, 422 U.S. at 476, 95 S.Ct. at 2190, 45 L.Ed.2d at 334–335; Codispoti v. Pennsylvania, supra note 32, 418 U.S. at 511–512, 94 S.Ct. at 2691, 41 L.Ed.2d at 919; Taylor v. Hayes, supra note 32, 418 U.S. at 495, 496, 94 S.Ct. at 2701–2702, 41 L.Ed.2d at 905–906; Baldwin v. New York, supra note 35, 399 U.S. at 69, 90 S.Ct. at 1888, 26 L.Ed.2d at 440. See also Cheff v. Schnackenberg, supra note 17, 384 U.S. at 380, 86 S.Ct. at 1526, 16 L.Ed.2d at 634. The addition of a term of probation does not, however raise an otherwise petty offense to the level of serious crime. Frank v. United States, supra note 32.

But, as the Court noted less than eight months ago, it "has as yet not addressed the question whether and in what circumstances, if at all, the imposition of a fine for criminal contempt, unaccompanied by imprisonment, may require a jury trial if demanded by the defendant." [44] Moreover, as the Court has observed,

> the boundaries of the petty offense category have always been ill-defined, if not ambulatory. In the absence of an explicit constitutional provision, the definitional task necessarily falls on the courts, which must either pass upon the validity of legislative attempts to identify those petty offenses which are exempt from jury trial or, where the legislature had not addressed itself to the problem, themselves face the question in the first instance. In either case it is necessary to draw a line in the spectrum of crime, separating petty from serious infractions. This process, though essential, cannot be wholly satisfactory, for it requires attaching different consequences to events which, when they lie near the line, actually differ very little. [45]

We are not, however, without some guidance, albeit imperfect. In ascertaining whether the punishment reflects conduct serious enough to require a jury trial, we are admonished "to refer to objective criteria, chiefly the existing laws and practices in the Nation.[46] In the federal regime, the most important criterion undoubtedly is the statute specifying that "[a]ny misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense." [47] And in evaluating the seriousness of contempt offenses by individuals sentenced to prison, the Court quite uniformly has hewed to the statutory definition.[48]

Very recently, however, in *Muniz v. Hoffman*,[49] the Court declared that its past references to the definitional statute [50] had "accorded it no talismanic significance," [51] and rejected "the proposition that a contempt must be considered a serious crime under all circumstances where the punishment is a fine of more than $500, unaccompanied by imprisonment." [52] Distinguishing monetary penalties from incarceration,[53] the Court held that a $10,000 fine imposed in a nonjury contempt proceeding on a local union of an unincorporated labor organization was constitutionally permissible. "[I]t

**44.** *Muniz v. Hoffman, supra* note 33, 422 U.S. at 476, 95 S.Ct. at 2190, 41 L.Ed.2d at 334–335.

**45.** *Duncan v. Louisiana, supra* note 35, 391 U.S. at 160–161, 88 S.Ct. at 1453, 20 L.Ed.2d at 502.

**46.** *Id.* at 161, 88 S.Ct. at 1453, 20 L.Ed.2d at 503. See also *Muniz v. Hoffman, supra* note 33, 422 U.S. at 476–477, 95 S.Ct. at 2190–2191, 45 L.Ed.2d at 335–336; *Baldwin v. New York, supra* note 35, 399 U.S. at 68, 70–73, 90 S.Ct. at 1887–1891, 26 L.Ed.2d at 440, 441–443; *Frank v. United States, supra* note 32, 395 U.S. at 148, 152, 89 S.Ct. at 1504–1505, 1507, 23 L.Ed.2d at 166, 168; *District of Columbia v. Clawans, supra* note 35, 300 U.S. at 625–630, 57 S.Ct. at 662–665, 81 L.Ed. at 846–849.

**47.** 18 U.S.C. § 1 (1970).

**48.** *Baldwin v. New York, supra* note 35, 399 U.S. at 70–71, 73 n.21, 90 S.Ct. at 1888–1889, 1890 n.21, 26 L.Ed.2d at 441, 442 n.21; *Frank v. United States, supra* note 32, 395 U.S. at 151–152, 89 S.Ct. at 1506–1507, 23 L.Ed.2d at 167–168; *Duncan v. Louisiana, supra* note 35, 391 U.S. at 161, 88 S.Ct. at 1453–1454, 20 L.Ed.2d at 503. See also *Mitchell v. Fiore, supra* note 17, 470 F.2d at 1153; *United States v. R. L. Polk & Co., supra* note 37, 438 F.2d at 380.

**49.** *Supra* note 33.

**50.** See notes 47–48 *supra* and accompanying text.

**51.** 422 U.S. at 477, 95 S.Ct. at 2190, 45 L.Ed.2d at 335.

**52.** *Id.* at 477, 95 S.Ct. at 2190–2191, 45 L.Ed.2d at 335.

**53.** "It is one thing to hold that deprivation of an individual's liberty beyond a six-month term should not be imposed without the protections of a jury trial, but it is quite another to suggest that, regardless of the circumstances, a jury is required where any fine greater than $500 is contemplated. From the standpoint of determining the seriousness of the risk and the extent of the possible deprivation faced by a contemnor, imprisonment and fines are intrinsically different." *Id.* at 477, 95 S.Ct. at 2191, 45 L.Ed.2d at 335.

is not tenable," the Court stated, "to argue that the possibility of a $501 fine would be considered a serious risk to a large corporation or labor union," [54] and "we cannot say that the fine of $10,000 imposed on [the] local . . . in this case was a deprivation of such magnitude that a jury should have been interposed to guard against bias or mistake." [55] Adverting to the Government's suggestion that the union collected dues from 13,000-odd members,[56] the Court concluded that "although the fine is not insubstantial, it is not of such magnitude that the union was deprived of whatever right to jury trial it might have under the Sixth Amendment." [57]

It is thus apparent that, in searching for the line between serious and petty crime where the punishment is a fine, we must, as the Court did, consider the kind of contemnor involved. And although, as the Court held, a $10,000 fine may not be serious for a 13,000-member labor union, it seems equally clear that the likely impact of a large fine is immensely greater where the contemnor is an individual. Certainly a $5,000 fine would be regarded as a serious hazard by most people, even some for whom it would not be calamitous. For this reason, we do not believe the Court intended the rationale of *Muniz* to extend to contempt cases involving individuals as distinguished from multimember organizations. For the very same reason, we are of the view that a fine as large as $5,000 cannot be assessed in a nonjury contempt proceeding against a contemnor who is an individual.

What, then, is the legal limit of fines permissible in those situations? In the present flux of the law, and with the relative scarcity of judicial expression directly in point,[58] the answer cannot be completely free from doubt.[59] We think, however, that the congressional enactment defining petty offenses [60] must, at least for the time being, be accepted as the standard. Our charge, we repeat, is "to refer to objective criteria, chiefly the existing laws and practices in the Nation." [61] The definitional statute has frequently been utilized as the point of reference, and as a reliable indicator of the line of demarcation between serious and petty offenses.[62] Indeed, nowhere else in federal law or practice are we able to detect any other benchmark of seriousness or pettiness in monetary criminal penalties. Until the Supreme Court provides additional guidance in this gray area, we feel the sound doctrine is to accord the statutory definition its accustomed effect,[63] and in the exercise of our supervisory authority to limit fines for criminal contempt in this circuit to $500, as imposed on individuals without a jury trial or a waiver thereof.[64]

Although appellant did not demand a jury trial, he did not waive it, for no jury trial was offered. Instead, he acquiesced in a proceeding charted from the start as nonjury—and hence one for a petty offense. We do not think it appropriate to remand for a jury trial. Just as a person who is proceeded against by information cannot later be imprisoned for more than a year, even though his action would have supported an indictment for felony, appellant cannot now be subjected to punishment beyond the limit on nonjury criminal con-

---

54. *Id.*

55. *Id.* at 477, 95 S.Ct. at 2191, 45 L.Ed.2d at 335–336.

56. *Id.* at 477, 95 S.Ct. at 2191, 45 L.Ed.2d at 336.

57. *Id.*

58. See cases cited *supra* note 39.

59. See text *supra* at note 45.

60. See text *supra* at note 47.

61. See text *supra* at note 46.

62. See note 48 *supra* and accompanying text.

63. Compare *Cheff v. Schnackenberg, supra* note 17, 384 U.S. at 380, 86 S.Ct. at 1526, 16 L.Ed.2d at 634.

64. Compare *Cheff v. Schnackenberg, supra* note 17, 384 U.S. at 380, 86 S.Ct. at 1526, 16 L.Ed.2d at 634. See also *Mitchell v. Fiore supra* note 17, 470 F.2d at 1153–1154; *Phillips v. United States,* 457 F.2d 1313, 1314 (8th Cir. 1972), both pre-*Muniz* decisions.

tempt adjudications. It is a burden, as Justice Harlan has pointed out, that to decide whether to proffer a jury trial, the judge must look ahead to the sentence;[65] but that is the state of this branch of the law. And since we have the authority to revise contempt sentences ourselves,[66] there is no occasion to remand the case for resentencing.[67] Instead, we adjust the fine downward to $500 and affirm the District Court's judgment as thus modified.

*So ordered.*

**65.** *Cheff v. Schnackenberg, supra* note 17, 384 U.S. at 382, 86 S.Ct. at 1537–1538, 16 L.Ed.2d at 635.

**66.** See *Cheff v. Schnackenberg, supra* note 17, 384 U.S. at 380, 86 S.Ct. at 1526, 16 L.Ed.2d at 634; *Green v. United States, supra* note 31, 356 U.S. at 188, 78 S.Ct. at 645, 2 L.Ed.2d at 690; *Drivers' Local No. 639 v. Penello,* 137 U.S. App.D.C. 64, 66–67, 420 F.2d 632, 634–635 (1969); *United States v. Levine,* 288 F.2d 272, 274–275 (2d Cir. 1961); *United States v. Conole* 365 F.2d 306, 308 (3d Cir. 1966), *cert. denied,* 385 U.S. 1025, 87 S.Ct. 743, 17 L.Ed.2d 673 (1967).

**67.** Compare *Mirra v. United States,* 402 F.2d 888, 890 (2d Cir. 1968); *United States v. Harris,* 367 F.2d 826, 827 (2d Cir. 1966), *cert. denied,* 385 U.S. 1010, 87 S.Ct. 718, 17 L.Ed.2d 547 (1967); *Mitchell v. Fiore, supra* note 17, 470 F.2d at 1153–1155; *United States v. R. L. Polk & Co., supra* note 37, 438 F.2d at 380. See also *Taylor v. Hayes, supra* note 32, 418 U.S. at 496, 94 S.Ct. at 2702, 41 L.Ed. at 906.