Imogene WILLIAMS, Plaintiff,

v.

UNITED STATES ELEVATOR
CORPORATION, et al.,
Defendants.

Civ. A. No. 88–0449–LFO.

United States District Court,
District of Columbia.

May 16, 1989.

Barry M. Chasen and Benjamin Tederick
Boscolo, Law Offices of Barry M. Chasen,
Greenbelt, Md., for Imogene Williams,
plaintiff.

Wade J. Gallagher, Martell, Donnelly,
Gallagher & Kastantin, Rockville, Md., for
U.S. Elevator Co., defendant.

John L. Ridge, Jr. and Donahue, Ehrman-
traut & Montedonico, Rockville, Md., for
G.A.L. Mfg. Corp., defendant.

Joseph F. Cunningham and Cunningham
& Crawford, Baltimore, Md., for Elcon En-

terprises, Inc. aka, Elevator Control Services, defendant.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff sues for injuries allegedly sustained during an incident on elevator 20 at the United States Department of Labor Building on August 20, 1986. Plaintiff has claimed as damages "pain and suffering, emotional distress, medical expenses, lost wages and future damages including emotional distress and medical expenses." Joint Pretrial Order (filed Feb. 14, 1989) at 10. At trial, plaintiff intends to call Dr. William Thompson, M.D., the psychiatrist who has been treating plaintiff, "to offer testimony as to the mental and emotional injuries Ms. Williams sustained in this incident." *Id.* at 2–3.

Because Dr. Thompson refused to release the records of his treatment of plaintiff, on February 15, 1989, defendant United States Elevator Corporation ("U.S. Elevator") moved to compel production of those documents. An Order was issued on February 24, 1989,[1] requiring Dr. Thompson to produce to defendant's counsel his records pertaining to plaintiff on or before March 6, 1989. After no such records were produced, defendant U.S. Elevator on March 20, 1989, moved for an order to show cause why Dr. Thompson should not be held in contempt of court, and on March 28, 1989, an Order was issued scheduling a show cause hearing for April 19, 1989. When Dr. Thompson did not attend the hearing scheduled for April 19, 1989, that hearing was rescheduled for May 4, 1989.

Because the evidence presented at the show cause hearing on May 4, 1989, proves beyond a reasonable doubt that Dr. Thompson knowingly refused to comply with the Order of February 24, 1989, Dr. Thompson must be found to have been in criminal contempt of court. Because he was never properly served with the Order of March 28, 1989, however, Dr. Thompson cannot be found in contempt for failing to attend the show cause hearing scheduled for April 19, 1989.

### I.

The factual background, as revealed from testimony given at the show cause hearing on May 4, 1989, is somewhat lengthy and confusing. On December 8, 1988, Michael Bourne, a professional process server, attempted to serve a subpoena on Dr. Thompson on behalf of defendant U.S. Elevator. The subpoena did not require Dr. Thompson's presence, merely "all records including hand-written notes, memoranda, reports, records[,] charts and documents of any type and/or description pertaining to IMOGENE WILLIAMS, S.S. #579–72–3546." Defendant's Exhibit 18 (Hearing of May 4, 1989).

According to the testimony of his secretary, Delores Graziano, Dr. Thompson is only at his office at 6101 Landover Road, Cheverly, Maryland, on weekends and occasional Tuesdays and Wednesdays. Ms. Graziano answers Dr. Thompson's office telephone from a phone in her home, located at 4225 75th Avenue, Landover Hills, Maryland, and Dr. Thompson's business mail is received both at his Cheverly office and at Ms. Graziano's Landover Hills home. Ms. Graziano testified that Mr. Bourne called Dr. Thompson in December of 1988 seeking to serve a subpoena and that she answered the call from the phone in her home and told Mr. Bourne that he could deliver the subpoena to 4225 75th Avenue, Landover Hills. Mr. Bourne then served Dr. Thompson by hand-delivering the subpoena to Ms. Graziano at her home.

Mr. Bourne testified on direct examination that Ms. Graziano stated that she was authorized to accept service of process on behalf of Dr. Thompson, and he so indicated in completing the return of service certificate. *See* Defendant's Exhibit 1. On

---

1. Although the Order was signed and dated on February 23, 1989, it was not filed until February 24, 1989. The Order to Show Cause filed on March 28, 1989, refers to this Order as the "Order of February 23, 1989." To avoid confusion, this Order, signed and dated on February 23, 1989, and filed on February 24, 1989, shall hereinafter be referred to as the Order of February 24, 1989.

cross-examination by Dr. Thompson,[2] Ms. Graziano testified that in the past she has signed for certified mail addressed to Dr. Thompson. Furthermore, on cross-examination, Mr. Bourne testified that he has served individuals authorized to accept service of process on behalf of others numerous times and that Ms. Graziano appeared to understand the nature of the document served. His impression is borne out by Ms. Graziano's testimony that she contacted Dr. Thompson and informed him of the subpoena within two hours of receiving it.

On December 16, 1988, plaintiff executed an authorization permitting Dr. Thompson to release to defendant's counsel "all available medicals, including psychiatric information concerning examinations and treatment rendered to me." Defendant's Exhibit 9. In late December 1988 and in January 1989, however, plaintiff informed Dr. Thompson that she only wanted him to release records pertaining to her treatment as a result of the incident on August 20, 1986, in the Department of Labor elevator. In spite of the subpoena, Dr. Thompson never released any of plaintiff's records, even though plaintiff had never verbally withdrawn her consent to the release of records pertaining to the elevator incident. Furthermore, by early February 1989, plaintiff began to instruct Dr. Thompson and Ms. Graziano that she had changed her mind and would authorize the release of any and all documents pertaining to her held by Dr. Thompson.[3]

Because of Dr. Thompson's refusal to release records and in response to a motion by defendant U.S. Elevator, the Court on February 24, 1989, ordered Dr. Thompson to

produce for inspection and copying "all records including handwritten notes, memoranda, reports, records, charts and documents of any type and/or description pertaining to Imogene Williams, S.S. # 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" at the law offices of Martell, Donnelly, Gallagher & Kastantin, 9 North Adams Street, Rockville, Maryland 20850 on the 6th day of March, 1989 at 10:00 a.m., provided a copy of this order be served on the said William A. Thompson, Jr., M.D. on or before the 1st day of March, 1989.

Order of February 24, 1989. According to the uncontroverted testimony of Mr. Bourne and Ms. Graziano and the affidavit of service prepared by Mr. Bourne, the Order of February 24, 1989, was served and accepted by Ms. Graziano at her home on behalf of Dr. Thompson on February 28, 1989. Ms. Graziano testified that she informed Dr. Thompson of the Order within a few hours of receiving it and certainly before the end of that day. Although the Order was served on or before March 1, 1989, Dr. Thompson did not produce the requested documents nor respond in any other manner, such as stating objections based on doctor-patient privilege, prior to March 6, 1989, as ordered.

Therefore, in response to a motion by defendant U.S. Elevator, on March 28, 1989, the Court issued an Order to Show Cause that stated in pertinent part:

[I]t is this *28th* day of March, 1989, hereby

ORDERED: that William A. Thompson, Jr., M.D. show cause, if any he may have, on or before April 12, 1989, why he should not be held in contempt of court for not obeying the subpoena issued December 5, 1988 or this Court's Order of February 23, 1989, and should not be

---

**2.** Although told that the Court recommended that he appear at the show cause hearing with an attorney, *see* Defendant's Exhibit 5, Dr. Thompson appeared *pro se.* At the beginning of the hearing, Dr. Thompson stated that he was aware of the Court's recommendation and his right to representation by counsel.

**3.** Ms. Graziano was the only witness who testified that plaintiff instructed Dr. Thompson or Ms. Graziano not to release plaintiff's medical records *after* February 28, 1989. Given the ab-

sence of any such testimony by Dr. Thompson and plaintiff's explicit testimony in rebuttal that she did not instruct Ms. Graziano to withhold any records later than early February 1989 and, indeed, called to request the production of such documents beginning later in February, the Court finds beyond a reasonable doubt that, as of February 28, 1989, at the latest, plaintiff had clearly instructed Dr. Thompson and Ms. Graziano that she did not want them to withhold any medical records.

subjected to appropriate sanctions to effect compliance with those orders; and it is further

ORDERED: that the United States Marshals Service shall personally serve a copy of this order on William A. Thompson, Jr., M.D.; and it is further

ORDERED: that a show cause hearing shall be held on April 19, 1989 at 9:00 A.M. in Courtroom No. 3.

Order of March 28, 1989. The United States Marshals Service never successfully served this Order. *See* Process Receipt and Return (filed April 26, 1989). Nevertheless, on April 14, 1989, Mr. Bourne served Ms. Graziano on behalf of Dr. Thompson a letter from defendant's counsel informing Dr. Thompson that a show cause hearing was scheduled for April 19, 1989, and informing Dr. Thompson of the Court's "recommendation that you appear at the show cause hearing with your attorney." Defendant's Exhibit 5; *see also* Defendant's Exhibit 4. Dr. Thompson testified that he was aware of the show cause hearing and was in the Washington, D.C. area from early morning until 4:00 p.m. on April 19, 1989. When court personnel telephoned Dr. Thompson shortly after 9:00 a.m. on April 19, 1989, Ms. Graziano indicated that Dr. Thompson would not be able to attend because of the death of his grandmother. The show cause hearing was then rescheduled for May 4, 1989.

### II.

■ Dr. Thompson potentially faces three separate charges of criminal contempt of court in violation of 18 U.S.C. § 401: failure to comply with the subpoena dated December 5, 1988, failure to comply with the Order of February 24, 1989, and failure to comply with the Order of March 28, 1989. The subpoena, however, was not a direct Order of this Court, and the Court

is therefore reluctant to impose criminal sanctions for a failure to comply. *But see United States v. Hilburn,* 625 F.2d 1177 (5th Cir.1980) (affirming contempt conviction for failure to comply with subpoena *ad testificandum* ); *In re: Bleecker,* 14 F.2d 1018 (S.D.N.Y.1925), *aff'd,* 14 F.2d 1019 (2d Cir.1926) (imposing fines for failure to comply with subpoena *duces tecum* ). Nor will Dr. Thompson be held criminally liable for failing to comply with the Order of March 28, 1989, because Dr. Thompson was never served with a copy of that Order. His failure to attend the April 19, 1989 show cause hearing is not actionable pursuant to 18 U.S.C. § 401 based solely on the representations made in a letter from counsel.[4]

■ Dr. Thompson is, however, criminally liable for his failure to comply with the Order of February 24, 1989. Dr. Thompson has raised three defenses to this charge. First, he argues that Ms. Graziano was not actually authorized to accept service of process on his behalf. Although Dr. Thompson may never have signed any formal authorization, the nature of Dr. Thompson's business arrangements with Ms. Graziano compel the conclusion that Ms. Graziano is, as she represented herself to be to Mr. Bourne, authorized *de facto* to accept formal service of process on Dr. Thompson's behalf. For over six years Dr. Thompson has relied on Ms. Graziano to tend to his business affairs during his frequent trips outside of the Washington, D.C. area. His office phone rings at a phone in her home. She has signed receipts for certified mail on his behalf. Business correspondence addressed to Dr. Thompson is sent to both his office and her home. He has no other staff in the Washington, D.C. area and, quite simply, unless Ms. Graziano is deemed authorized to accept service of process on his behalf there exists almost no

---

**4.** Title 18, United States Code, section 401 states in pertinent part:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Failure to attend a hearing the only notice of which one has received is in the form of a letter from counsel cannot be characterized as "[d]isobedience or resistance to [a Court's] lawful writ, process, order, rule, decree, or command."

way in which a reasonably diligent litigant could arrange to serve Dr. Thompson. Furthermore, Ms. Graziano testified that, whenever she was served with legal documents directed to Dr. Thompson in this matter, she brought the documents to Dr. Thompson's attention within a matter of several hours. In this regard, Ms. Graziano acted in exactly the same manner as would someone formally authorized to accept service of process. Thus, the nature of the business relationship between Dr. Thompson and Ms. Graziano, in conjunction with Ms. Graziano's statements to Mr. Bourne that she was authorized to accept service of process on behalf of Dr. Thompson, establish beyond a reasonable doubt that Dr. Thompson could be properly served by personally serving Ms. Graziano at her home in Landover Hills, Maryland.

■ Second, Dr. Thompson argues that, by the terms of the Order of February 24, 1989, he did not need to produce plaintiff's medical records on or before March 6, 1989, because he did not receive the Order until after March 1, 1989. But the Order of February 24, 1989, required Dr. Thompson to produce plaintiff's medical records, "provided a copy of this order be *served* on the said William A. Thompson, Jr., M.D. on or before the 1st day of March, 1989." Order of February 24, 1989 (emphasis added). Dr. Thompson was properly served with a copy of the Order when Mr. Bourne personally served Dr. Thompson's authorized representative for the purpose of accepting service of process, Ms. Graziano, on February 28, 1989. The Order did not require a copy to be "received" by Dr. Thompson on or before March 1, 1989, but rather required a copy to be "served" on Dr. Thompson on or before March 1, 1989. This was done. Furthermore, although Dr. Thompson may not have received a copy of the Order until several days after March 1, 1989, Ms. Graziano testified that she informed him of the contents of the Order on February 28, 1989, only a few hours after the Order was served. Thus, Dr. Thompson had actual knowledge of his obligations under the Order "on or before the 1st day of March, 1989." Finally, if Dr. Thompson intended to raise this alleged failure of service as a defense, he should have done so in response to the Order. Instead, Dr. Thompson chose to ignore the Order entirely, thereby subjecting himself to the criminal contempt charges now pending.

Third, Dr. Thompson argues that he should not be held in contempt for failing to produce plaintiff's medical records because plaintiff asked him to release only those records directly related to the elevator incident and her treatment in response thereto. This argument, however, fails to explain why Dr. Thompson did not produce any records at all. At a minimum, he should have produced those records that did relate directly to the elevator incident. In addition, the testimony proved beyond a reasonable doubt that, as of February 28, 1989, plaintiff had clearly instructed Dr. Thompson and Ms. Graziano that she wanted them to produce all of her records. *See supra* note 3. Finally, if Dr. Thompson had wished to raise the doctor-patient privilege as a defense, he should have done so in response to the Order of February 24, 1989, by stating the nature of his objection to defendant's counsel on March 6, 1989. Instead of asserting the doctor-patient privilege, in which case the validity of that assertion could have been properly addressed by motion, Dr. Thompson chose instead to ignore the Court's Order. By so doing, Dr. Thompson unnecessarily delayed the resolution of this case and forced several lawyers, the parties, and this Court to spend time, effort, and resources needlessly. Accordingly, because the testimony and exhibits presented at the hearing on May 4, 1989, and the entire record herein establish beyond a reasonable doubt that Dr. Thompson knowingly disobeyed the Order of February 24, 1989, the accompanying Order will find Dr. Thompson to have committed criminal contempt of Court in violation of 18 U.S.C. § 401.

### III.

■ An appropriate sanction would be for Dr. Thompson to pay those involved in this litigation the value of the time they spent as a result of his contumacious behavior. Counsel for both defendants sub-

mitted itemized lists of the time they believe they spent on this matter due solely to Dr. Thompson's contumacious behavior, excluding any time spent preparing or serving the December 5, 1988 subpoena. *See* Defendant's Exhibits 16, 17. Similarly, Mr. Bourne testified that he would charge $420.00 for his services, excluding the cost of serving the initial subpoena.

Not all of the time accounted for in Defendant's Exhibits 16 and 17, however, is directly attributable to Dr. Thompson's failure to comply with the Order of February 24, 1989. Dr. Thompson's contempt should not expose him to liability for the failure of a settlement conference to produce a disposition of this case. Nor should Dr. Thompson be forced to pay for the time expended preparing defendants' motions in limine. The relationship between Dr. Thompson's failure to comply with the Order of February 24, 1989, and the actions of defendants' counsel in these instances is simply too attenuated. For example, the settlement conference might well have reached an impasse even if Dr. Thompson had produced plaintiff's medical records.

Furthermore, for reasons stated above, Dr. Thompson will not be found guilty of contempt for failing to comply with the Order of March 28, 1989. Therefore, he should not be liable for the time spent by counsel on April 19, 1989, waiting for Dr. Thompson to appear at the show cause hearing. His failure to comply with the Order of February 24, 1989, however, did produce the need for a show cause hearing at some time, so it is appropriate to add to the costs enumerated in Defendant's Exhibits 16 and 17 the approximate value of the time spent by counsel at the show cause hearing on May 4, 1989. Prior to hearing the testimony of Ms. Graziano, defendant U.S. Elevator's counsel estimated his expenditure of time on April 19, 1989, as five hours, at a billing rate of $100.00 per hour, and defendant Elcon's counsel estimated his expenditure of time as four hours, at a billing rate of $75.00 per hour. Ms. Graziano's testimony and supplemental arguments would add approximately one hour to each of these estimates. The combination of all of these adjustments, detailed

more fully in the accompanying Appendix, demonstrates that Dr. Thompson should pay counsel for defendant U.S. Elevator $1,430.00, should pay counsel for defendant Elcon $931.25, and should pay Michael Bourne $420.00. Accordingly, the accompanying Order will require Dr. Thompson to pay those individuals those amounts on or before June 2, 1989.

### IV.

█ The total amount of the sanction imposed on Dr. Thompson, $2,781.25, does not implicate his Sixth Amendment right to a trial by jury. Although our Court of Appeals held in 1976 that $500.00 was the maximum monetary sanction that a court without a jury could impose against an individual for criminal contempt, the $500.00 ceiling explicitly derived from the statutory definition of "petty offenses." *See Douglass v. First Nat'l Realty Corp.,* 543 F.2d 894, 901–02 (D.C.Cir.1976). At that time, 18 U.S.C. § 1 defined petty offenses as, *inter alia,* offenses for which the maximum fine for an individual offender was $500.00. On October 30, 1984, however, that provision was amended to define petty offenses as, *inter alia,* offenses for which the maximum fine for an individual offender was $5,000.00. *See* Pub.L. No. 98–596, § 8, 98 Stat. 3138 (1984). Furthermore, for offenses committed after November 1, 1987, Congress has established a $5,000.00 maximum fine for any infraction or Class B or C misdemeanor that does not result in death—offenses that can be considered, under the current United States Code, roughly the equivalent of the former "petty offenses." *See* 18 U.S.C. § 3571(b)(6) & (b)(7). Given these statutory changes, the rationale of *Douglass* if not the specific holding, and taking judicial notice of the fact that a $500.00 fine is simply not as significant, financially and otherwise, as it was over thirteen years ago, the fines imposed in this case cannot be deemed significantly onerous to warrant a jury trial pursuant to the Sixth Amendment of the United States Constitution.

## ORDER

For the reasons stated in the accompanying Memorandum and Appendix, it is this 10th day of May, 1989, hereby

ORDERED AND ADJUDGED: that William A. Thompson, Jr., M.D., doing business at 6101 Landover Road, Cheverly, Maryland 20785, should be, and is hereby, found beyond a reasonable doubt to have violated 18 U.S.C. § 401 by knowingly failing to comply with this Court's Order of February 24, 1989; and it is further

ORDERED AND ADJUDGED: that, in consideration of this violation of 18 U.S.C. § 401, William A. Thompson, Jr., M.D., on or before June 2, 1989, shall pay to Martell, Donnelly, Gallagher & Kastantin, counsel for defendant United States Elevator Corporation, the sum of $1,430.00, shall pay to the Law Offices of Joseph Cunningham, counsel for defendant Elcon Enterprises, Incorporated, the sum of $931.25, and shall pay to Michael Bourne, doing business as a process server at 9 North Adams Street, Rockville, Maryland 20850, the sum of $420.00.

## APPENDIX

United States District Court for the District of Columbia

Imogene Williams, Plaintiff,

v.

United States Elevator Corporation, *et al.*, Defendants.

Civil Action No. 88–0449–LFO

*Costs Incurred by Counsel for Defendant U.S. Elevator*

Total Hours Claimed (Defendant's Exhibit 16) = 20.1

*Less* the following items:

4/5/89 Receipt and review of medical records of Dr. Thompson (0.7)

4/10/89 Preparation and filing of motion in limine/continuance (1.5)

4/11/89 Preparation for, attendance at and participation in hearing and settlement conference before Judge Oberdorfer (4.5)

4/11/89 Receipt and review of co-defendant's motion in limine (0.3)

4/19/89 Attendance at and participation in hearing to show cause (4.8)

*Plus* the following item:

5/4/89 Attendance at and participation in hearing to show cause (6.0)

*Equals* 14.3 hours @ $100.00/hour = $1,430.00

*Costs Incurred by Counsel for Defendant Elcon*

A. *Costs Incurred by Joseph Cunningham*

Total Hours Claimed (Defendant's Exhibit 17) = 4.25

*Less* the following item:

4/11/89 Settlement conference (4.00)

*Equals* 0.25 hours @ $125.00/hour = $31.25

B. *Costs Incurred by Eric Ertman*

Total Hours Claimed (Defendant's Exhibit 17) = 19.50

*Less* the following items:

4/10/89 Research, draft of Motion in Limine (3.75)

4/10/89 Call from BB re settlement conference (.25)

4/11/89 Preparation for settlement conference (.50)

4/11/89 Received, read, and noted Motion in Limine of USEC (.25)

4/11/89 Attended settlement conference/Motion hearing (4.00)

4/11/89 Received, read, and noted BB opposition to motion in limine (.25)

4/12/89 Call to client, rescheduled meeting in wake of hearing (.25)

4/14/89 Received, read, and noted order denying Motion in Limine (.25)

4/19/89 Attended Show Cause hearing; Dr. T never showed (3.00)

*Plus* the following item:

5/4/89 Attended show cause hearing (5.00)

*Equals* 12.00 hours @ $75.00/hour = $900.00

## C. *Expenses and "Consequentials"*

Mr. Cunningham listed a $15.00 expense for April 11, 1989, which the Court assumes is related to his attendance at the settlement conference held that day. For reasons stated in the accompanying Memorandum, Dr. Thompson should not be held liable for that expense.

Mr. Ertman listed a $6.00 expense for April 19, 1989, which the Court assumes is related to his attendance at the show cause hearing scheduled for that day. For reasons stated in the accompanying Memorandum, Dr. Thompson should not be held liable for that expense.

Mr. Ertman listed 6.00 hours as "consequentials," for "[i]nforming witnesses, clients re continuance." For reasons stated in the accompanying Memorandum, Dr. Thompson should not be held liable for that expense, whether it be related to the denial of defendants' motions in limine and the resulting continuance of the trial or whether it be related to his failure to appear on April 19, 1989, and the resulting continuance of the show cause hearing.