UNITED STATES of America, Plaintiff,

v.

PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION INC., et al., Defendants.

Alexander T. GRAHAM, Plaintiff,

v.

PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION INC., et al., Defendants.

Civ. A. Nos. 81–1805, 81–1806.

United States District Court, District of Columbia.

Aug. 11, 1981.

---

Theodore C. Hirt, Dennis G. Linder, Mark C. Rutzick, Mark A. Chevez, Victoria Bleiberg, Dept. of Justice, Washington, D. C., for plaintiff U. S.

D. Randall Frye, Bruce D. Rosenstein, Federal Labor Relations Authority, Washington, D. C., for plaintiff Alexander T. Graham.

Richard J. Leighton, Washington, D. C., for defendants.

## MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

On August 3, 1981, the Court issued a temporary restraining order enjoining the Professional Air Traffic Controllers Organization (PATCO), and a number of its individual officers from taking part in a strike and from engaging in other enumerated acts. Later the same day, the Court found PATCO and its president, Robert Poli, to be in civil contempt for failing to comply with provisions of the temporary restraining order, it imposed a schedule of fines, and it specified certain acts through which the defendants might purge themselves of the contempt. A hearing was held on August 10, 1981, on various applications and motions which had in the meantime been filed by the parties. These motions will be discussed below under three headings: requests for preliminary injunction, further contempt proceedings, and motions relating to the Controllers Benefit Fund.

### I

The United States and the Federal Labor Relations Authority[1] are requesting that the Court issue preliminary injunctions in their respective cases. Both plaintiffs recognize that the strike itself has ended under the circumstances described below, *infra* at pp. 163–164, and they concede that their request for further injunctive relief is therefore primarily concerned with two collateral matters—alleged interference by defendants with air traffic and the possible disposition by defendants of the so-called Controllers Benefit Fund.

The evidence adduced at yesterday's hearing as to actions on the part of defendants which allegedly served to disrupt the orderly continuance of air traffic shows that any such disruptions have been minimal. There was testimony to the effect that picket lines were established at the nation's major air traffic control centers; that such picket lines slowed the entry into these centers of several non-striking controllers and other personnel but did not prevent anyone from reporting to work or from performing his job; and that some persons were subjected to insulting remarks as they entered their places of work. But there is no evidence of defendants' having engaged in massive activities having the effect of substantially interfering either with air traffic or with government employees desirous of operating the air control system, and it appears that domestic air traffic is proceeding without significant dif-

---

1. See 5 U.S.C. § 7101 *et seq.*, Title VII of the Civil Service Reform Act of 1978, P.L. 95–454, 92 Stat. 1111.

ficulty, albeit at a reduced rate. Plaintiffs' showing falls far short of the irreparable injury necessary to support a nationwide injunction of the kind requested here.

It is also relevant in this connection that the United States has had available to it, and has used during the past week, the services of local law enforcement officials to deal with whatever minor incidents that may have occurred in connection with the picketing activities. Thus, to the extent that defendants are faced with problems, they do not lack other adequate remedies,[2] and there is therefore no need for extraordinary equitable relief.

■ The second aspect of the injunctive relief requested relates to disbursements from the Controllers Benefit Fund. No evidence whatever has been introduced to the effect that defendants have plans improperly to distribute any monies from that fund. Moreover, to the extent that the Court is being requested to immobilize the fund on the basis of a suspicion that defendants might wish to dissipate it, the short answer is that the fund has already been attached pursuant to an order of a federal court in New York and is thus not in immediate jeopardy in any event.

Although plaintiffs have made a greater showing on the issue of likelihood of success on the merits, at least some jurisdictional problems do exist in that area, in addition to the overriding problem of possible mootness as a consequence of the termination of the strike. Whatever may be the ultimate decision on those issues, however, the failure of plaintiffs to demonstrate irreparable injury militates strongly against the issuance of an injunction. See *Virginia Petroleum Jobbers Association v. FPC*, 259 F.2d 921 (D.C.Cir.1958).[3]

For these reasons, the applications of plaintiffs for preliminary injunctions are denied.[4] At the same time, however, the Court is also denying defendants' motion to dismiss these actions. In the event that plaintiffs are able to demonstrate hereafter that PATCO, the individual defendants, or others in concert with them, are engaged in activities which result in a substantial interference with air traffic or with government employees engaged in controlling such traffic, they are free to petition the Court for appropriate injunctive relief based upon the existing lawsuits. Denial of the preliminary injunctions at this time is without prejudice to such future petitions.

II

■ In its order holding the union and its president in contempt, the Court directed that, in order to ensure compliance with the temporary restraining order, fines would be imposed upon defendant PATCO as follows:

(a) in the event that PATCO is not in compliance by 8:00 p. m. on August 4, 1981, a fine of $250,000;

(b) in the event that PATCO is not in compliance by 8:00 p. m. on August 5, 1981, an additional fine of $500,000;

(c) in the event that PATCO is not in compliance by 8:00 p. m. on August 6, 1981, an additional fine of $1 million per day through August 9, 1981;

(d) in the event that PATCO is not in compliance by 8:00 p. m. on August 9, 1981, plaintiff may apply to the Court the following day for such further relief as may be appropriate.

Similarly, fines were being imposed upon the defendant Poli as follows:

$1,000 per day beginning on August 4, 1981 at 8:00 p. m. if he is not in compliance with the order by that date and time through 8:00 p. m. on August 9, 1981. In

---

2. It appears also that the government has filed some sixty requests for injunctions in as many federal courts, sought and secured several contempt orders, terminated the employment of thousands of air traffic controllers, threatened criminal prosecutions, and indicated that it would not deal with the present union.

3. By directing that the District Court shall grant injunctive relief only when it is "just and proper" to do so, section 7123 of title 5 incorporates standards similar to those which are traditional to courts of equity.

4. The temporary restraining orders will expire in the normal course of events tomorrow.

the event that defendant Poli is not in compliance by 8:00 p. m. on August 9, 1981, plaintiff may apply the following day to the Court for such further relief as may be appropriate.

The parties are in disagreement on the amount of the fines that have accumulated under the order, plaintiffs arguing that PATCO owes $4,750,000 and Poli $6,000 for the entire period between August 3 and August 9, and defendants contending that no fines should be imposed.

On Monday, August 3, 1981, at 11:00 a. m. the President of the United States announced that air controllers who fail to report for duty within 48 hours "have forfeited their jobs and will be terminated." Two days later, Secretary of Transportation Drew Lewis announced that "as of 11:00 o'clock today, the strike is over." Once it was decided by the government that it would terminate and not rehire any individuals who did not report for work by a certain date and time, no individual, or the union, could be held after the effective date of those decisions to have violated the return-to-work order of this Court.

■ When an employer has terminated employees and has stated that it will not permit them to return to work, there is, by definition, no longer a strike, for under such circumstances the employees cannot return to work, even if they are of a mind to do so. By the same token, the employees, as well as the union and its officers, cannot purge themselves of the contempt of a no-strike order when compliance with the order has been made impossible by the employer (see *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)) and, being unable to purge themselves, they can no longer be held in or punished for civil con-

tempt. In short, once the government declared that the air traffic controllers would not be permitted to return to work, the obligations of defendants under the back-to-work provisions of the injunctive orders of the Court ceased.[5]

Evidence before the Court indicates that, notwithstanding the apparently unequivocal statements of the President and of the Secretary of Transportation, some air traffic controllers were permitted to return to work after 11:00 a. m. on Wednesday, August 5. The evidence in that regard may be divided into two separate categories: that involving the normal shift operations of the Federal Aviation Administration and its air controllers, and that concerning the fact that, in some cases, employees who were absent from work on annual or sick leave rather than on strike would have been and apparently were accepted back to work by the FAA even beyond the extended deadline.

As a practical matter, substantial numbers of strikers could have returned to work and would have been accepted by the government through the first three eight-hour shifts after the time limit imposed by the President, that is until 8:00 a. m. on August 6, 1981. For that reason, the national union and its president, who continued to advocate the strike, can be charged with having violated the injunction until that date and time. However, in view of the President's statement, the relative insignificance of the contingencies beyond that period, and the ambiguities that existed, the Court could not, consistently with due process requirements,[6] hold that defendants were in violation beyond that point.

Inasmuch as by 8:00 p. m. on Thursday, August 6, 1981, defendant PATCO was no

---

5. To be sure, the collateral activities discussed herein continued thereafter. However, for the reasons recited at pp. 162–163, *supra,* the Court would not be justified in imposing fines for the August 6–9 period.

6. In view of the multiplicity of the statements issuing from government officials and the contradictions and ambiguities that they involved, it would have been impossible for any defend-

ant to know with the requisite definiteness whether a strike or a government refusal to permit air controllers to work was in progress after the three shifts had reported subsequent to 11:00 a. m. on August 5. *City of Mishawaka v. American Electric Power Co.,* 616 F.2d 976, 991 (7th Cir. 1980); *American Optical Corp. v. A O Industries,* 306 F.Supp. 699 (W.D.N.Y. 1969).

longer in violation of the no-strike orders issued by this Court, there is warrant for fining it only for the first two days, that is, in the amount of $750,000, the remaining $4 million being remitted. The fine on Robert Poli must similarly be reduced to $2,000 on the same basis, the remaining $4,000 being remitted. There is, however, no foundation for waiving all fines, as defendants request. During the period in question, they were in flagrant and public violation of the Court's order; and they made no effort to comply with the injunction or otherwise to purge themselves of contempt of court. The fines of $750,000 and $2,000 respectively will stand.

■ Finally, plaintiffs have requested that PATCO be fined $500,000 per day from this day forward as an inducement to future compliance. The Court is hard pressed to see how the union could act now to rectify its earlier wrongs, for plaintiffs have closed all doors by which PATCO might now comply with the law. First, the government refused to negotiate further with the defendants as long as the strike action continued, and second, by refusing to allow any of the air traffic controllers to come back to work, it has made it impossible for the union to end the strike action. It should be noted in this connection that the Federal Labor Relations Act puts a premium on negotiation (section 7116(a)(5)), and that it vests in the Federal Labor Relations Authority the responsibility for determining when a union may no longer be recognized by the government as the exclusive representative of a bargaining unit (section 7118). The government by-passed these legislative directives and procedures, and it cannot now be heard to seek large fines[7] for a situation which, whatever PATCO's past culpability, the union is at present totally unable to rectify. Plaintiffs cannot have it both ways: to declare the strike over by refusing to deal either with the union or with the employees, yet to seek fines at a level which implies a continuation of the strike.

### III

■ Plaintiffs have requested that the amount of the civil contempt fine be reduced to a judgment. Defendants oppose this motion on the ground that such an action would be premature, since the question of this Court's subject matter jurisdiction has not been fully briefed or finally resolved. This objection is well taken. While a criminal contempt conviction is not invalidated simply because the underlying order is set aside on appeal for lack of jurisdiction or other reasons (see *United States v. United Mine Workers*, 330 U.S. 258, 292–95, 67 S.Ct. 677, 695–96, 91 L.Ed. 884 (1947)), the same is not true with regard to civil contempt judgments.

■■ When the contempt is civil rather than criminal,

> [t]he right to remedial relief falls with an injunction which events prove was erroneously issued ... and a fortiori when the injunction or restraining order was beyond the jurisdiction of the court.

*United States v. United Mine Workers, supra*, 330 U.S. at 295, 67 S.Ct. at 696; see also *Lewis v. S. S. Baune*, 534 F.2d 1115, 1119 (5th Cir. 1976); *Bethlehem Mines Corp. v. United Mine Workers*, 476 F.2d 860, 864–67 (3d Cir. 1973). This being true, it would be inappropriate to reduce the civil contempt fine of $750,000 to judgment before the Court has had the opportunity to examine at greater length the issue of its jurisdiction with regard to the action brought by the United States (No. 81–1805) in light of the Federal Labor Relations Act.

■ Plaintiff United States has also moved for leave of Court forthwith to take the deposition upon oral examination of defendant PATCO and to require production of documents, pursuant to Rule 30(a) of the Federal Rules of Civil Procedure. The Court granted that motion on August 6, 1981, and it subsequently received defendants' motion for a protective order.

The primary purpose of the deposition, it appears, is to gather information about

---

7. It is doubtful that a fine of $500,000 per day has ever seriously been sought to deter activi-

ties having so slight an impact as the picketing revealed by the evidence on this record.

PATCO's Controllers Benefit Fund, and to that end the government has requested that PATCO designate an agent to testify pursuant to Rule 30(b)(6). Defendant PATCO requests a protective order on the ground that the requested information is privileged and protected by the Fifth Amendment. The Court finds it difficult to believe that defendants cannot find one agent who is able to testify with regard to matters concerning this fund without self-incrimination problems.[8] No one has claimed that the Benefit Fund is in any way illegal, or that the details of its existence have had anything to do with defendants' contumacious actions. For that reason, unless it can be demonstrated that there is no agent in existence who can be deposed without incriminating himself—a contingency which, for the reasons stated, is unlikely—no protective order will be issued.

For the reasons stated herein, it is this 11th day of August, 1981,

ORDERED That plaintiff's motion for a preliminary injunction in Civil Action No. 81–1805 be and it is hereby denied; and it is further

ORDERED That plaintiff's motion for entry of judgment on civil contempt in Civil Action No. 81–1805 be and it is hereby denied; and it is further

ORDERED That defendants' motions to dismiss in Civil Action No. 81–1805 be and it is hereby denied; and it is further

ORDERED That defendants' motion for a protective order in Civil Action No. 81–1805 be and it is hereby denied; and it is further

ORDERED That plaintiff's motion for a preliminary injunction in Civil Action No. 81–1806 be and it is hereby denied.

---

**8.** It should be noted that at yesterday's hearing counsel for the union stated that it had not yet been determined whether an agent could be found who could testify to these matters without invoking the Fifth Amendment. This being true, the Court finds the motion for a protective order to be at a minimum premature.