Anthony **SKIRLICK**, et al., Plaintiffs,

v.

**PATCO**, et al., Defendants.

Civ. A. No. 84–2371.

United States District Court, District of Columbia.

April 7, 1987.

Glenn H. Carlson, Kenney, Carlson & Warren, Stephen A. Weitzman, Weitzman & Rogal, Washington, D.C., for plaintiffs.

Mitchell H. Stabbe, Holland & Knight, Washington, D.C., for defendant Fidelity & Deposit Co. of Maryland.

## MEMORANDUM OPINION

SPORKIN, District Judge.

### I. Introduction

This is an action on a bond. Plaintiffs are air traffic controllers who did not join their fellow Professional Air Traffic Controllers Organization ("PATCO") members in the 1981 air traffic controllers strike.[1] They are suing to recover on a surety bond carried on their union leaders. Their theory is that by conducting an illegal strike, the union leaders engaged in activity covered by the bond[2] and that therefore, the bonding company must honor its commitment.

The bonding company—the only defendant left in the case—interposes four defenses as a matter of law: first, that plaintiffs have no standing since only the union's trustee in bankruptcy can bring a claim on the bond; second, that plaintiffs have failed to fulfill the conditions precedent on the bond; third, that the acts complained of do not constitute "fraud or dishonesty" in the handling of funds, which is what the bond covers; and fourth, that plaintiffs knew of similar behavior by the PATCO officers in the past—that is, an earlier strike engaged in by those leaders—about which they did not inform the defendant, and thus they are now barred from bringing this claim. Because I find that the plaintiffs' action was not timely filed and that the bond at issue was not intended to cover the actions complained of, I grant defendant's motion for summary judgment and need not reach the other issues raised by the defendants.

---

1. Over seventy percent of the federally employed air traffic controllers walked off the job on August 3, 1981 after PATCO and the Federal Aviation Administration ("FAA") failed to agree on a new collective bargaining agreement. *See PATCO v. FLRA*, 685 F.2d 547, 551 (D.C.Cir. 1982). Although the government obtained restraining orders against the strike, *see e.g., United States v. PATCO*, 524 F.Supp. 160 (D.D.C. 1981), *Graham v. PATCO*, 524 F.Supp. 160 (D.D. C.1981), and contempt citations when these restraining orders were not followed, *see e.g., Air Transport Assn. of America v. PATCO*, 516 F.Supp. 1108 (D.C.N.Y.1981), *United States v. Phillips*, 527 F.Supp. 1361 (N.D.Ill.1981), the strikers refused to return to work. President Reagan then fired some 11,500 who did not return to work by an August 5, 1981 deadline. *See PATCO v. United States Department of Transportation*, 529 F.Supp. 614 (D.Minn.1982).

2. The activities complained of which plaintiffs believe are covered by the bond are generally set forth in paragraph 73 of the Complaint filed in this action. Paragraph 11 of a prior Complaint filed by plaintiff in the United States Bankruptcy Court for the District of Columbia sets forth these actions with greater specificity:

> 11. Union funds have been made available for, *inter alia*, the payment of salaries to perform illegal acts, travel expenses to perform illegal acts, publication of materials to engender illegal acts, and counsel fees to defend the defendants charged with civil contempt and violations of 5 U.S.C. § 7311; such acts were detrimental to the union and its lawful membership and a breach of the fiduciary duties of the defendants.

Memorandum of Points and Authorities in Support of Defendant Fidelity & Deposit Company of Maryland's Motion for Summary Judgment ("Def.Br.") at 24 (citing Bankruptcy Complaint, ¶ 11).

## II. Timeliness

■ Defendant alleges that the plaintiffs have failed to comply with two provisions in the bond agreement relating to the time for bringing an action on the bond. *First,* the bond requires that the insured file a detailed proof of loss, duly sworn to, with defendant, within four months after the discovery of loss. *Second,* the bond provides that no action shall lie against the defendant "at all unless commenced within one year from the date when the Insured discovers the loss." The plaintiffs' loss was discoverable in August of 1981, at the time of the strike, so a proof of loss should have been filed by the end of 1981, and an action should have been commenced by August of 1982. Neither of these deadlines was met.[3]

Plaintiffs ask the Court to excuse their delay for several reasons. First, they argue:

Until April of 1982 [the plaintiffs] did not know to whom to give notice. That information was in the control of PATCO's "leaders," the wrongdoers. Not knowing to whom to provide the information rendered is not only impracticable but impossible to do so. Secondly, the overtime demands on these controllers during the period before April of 1982 left little time for them to pursue their claim, or at least impeded that ability and made it impracticable to do so.

Opposition to Defendant Fidelity & Deposit Company of Maryland's Motion for Summary Judgment ("Pl.Br.") at 32. (Plaintiffs go so far as to suggest that the defendant acted in concert with the striking union members to deprive the non-striking members of any information concerning the bond. Pl.Br. at 30–31, 44.) But, even if I accept this April, 1982 date as the time

at which to start the clock, the plaintiffs still failed to give the defendant a proper proof of claim within four months and still failed to bring this action within one year.

Plaintiffs then fall back on a second argument to explain their delay from April of 1982—they claim they were relying on the union's trustee in bankruptcy, and could not bring this action until the trustee allowed them to. *See e.g.,* Pl.Br. at 28–30 *citing Hough v. PATCO,* Case No. 81–00656, Adv. No. 82–0093, (Bankr.D.D.C., Dec. 20, 1983) ("the trustee is the only party in interest to pursue any such causes of action ...") This argument is also misplaced though, because, although the bankruptcy case stayed actions against the union, it in no way impeded the plaintiffs from pursuing this claim against the bonding company. Moreover, to the extent plaintiffs believed only the trustee could bring this case against the bonding company, plaintiffs could have brought an action against the trustee forcing him to give them the claim before the limitations period ran. What they should *not* have done was sit on the claim and then attempt to argue that their delay should be excused.

Failing in these two arguments, plaintiffs finally contend that the notice provisions of the bond conflict with a union member's right to sue their unions, as guaranteed by the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), Section 101(a)(4), as amended, 29 U.S.C. § 411(a)(4),[4] and therefore that such notice requirements are unenforceable. Pl.Br. at 35–44. I do not believe that enforcement of these contractual provisions conflicts in any manner with the union member's right to sue as guaranteed by § 101(a)(4). First, I note that this type of bond provision has been approved by the

---

**3.** Plaintiffs appear to argue that because the air traffic controllers strike was so well known, the defendant had notice of a pending claim from the time of the strike. This argument misses the point. While defendant certainly can be held to have had knowledge of the *strike* itself, it would be inequitable to hold that defendant had any idea this type of claim would be filed pursuant to the strike. This is a novel reading of a surety bond. If anything, in bringing an action as unique as this one, the plaintiffs should be

more strictly bound by the time limitations of the contract. Otherwise, potential plaintiffs could spend years thinking up new actions under a bond and the company would have no protection whatsoever.

**4.** The pertinent language reads, "No labor organization shall limit the right of any member thereof to institute an action in any court ..." 29 U.S.C. § 411(a)(4).

Department of Labor. Second, unlike the plaintiffs, I fail to see any significant relationship between the bonding requirements of § 502 and the Bill of Rights guarantees of § 101(a)(4) and thus cannot see how enforcing the notice provisions of this union contract will undercut the union members statutorily guaranteed rights.

Plaintiffs have failed to come forward with any compelling reason why they should be excused from the contractually-agreed to time limitations on bringing an action against the bond company. Accordingly, the case must be dismissed as untimely. But, even if the action were not dismissed as untimely, it would have to be dismissed because the parties did not bargain for a bond to cover the actions complained of here.

III. Fraud or Dishonesty

PATCO's leaders were bonded by defendants to protect the union against acts by these officials amounting to "fraud or dishonesty." The fact pattern in this case does not involve any of the usual characteristics of fraud or dishonesty; rather, plaintiffs would have the Court undertake a uniquely broad reading of the "fraud or dishonesty" provision so as to cover actions taken by the PATCO leaders in furtherance of their illegal strike against the federal government.

In their most succinct statement of how the union officials who led this strike violated the fraud or dishonesty provision of the bond, plaintiffs argue:

> In conducting an illegal strike, and then refusing to obey the court order directing them back to work, the individually named defendants, who were bonded by defendant F. & D., clearly acted in disregard of PATCO's interest. These union officers knowingly violated 5 U.S.C. § 7116(b)(7) which prohibits strikes by Federal employees and, thus, triggered § 7120(f) of the statute which calls for the decertification of labor organizations that conduct illegal strikes. Additionally, these officers caused jointly owned union funds to be spent in furtherance of such illegal conduct. In do-

ing so, these defendants subjected the union to a significant "likelihood of loss;" in light of both the strike prohibition and decertification provision, it was practically a foregone conclusion that the strikers would be fired and the union decertified. Thus, the monies spent in furtherance of the strike would never be recouped.

Pl. Br. at 48–49. *See also* footnote 2, *supra.*

■ While the plaintiffs' case has surface appeal, it is clear that the acts for which they wish to recover are neither the type of activity for which the LMRDA, 29 U.S.C. § 502(a), requires union leaders to be bonded, nor the type intended to be covered by the parties (the union and the defendant) to the specific bonding agreement at issue here. This is so for five reasons. *First*, the language and legislative history of the LMRDA—and its implementing regulations—are clear that Congress intended to require the simple type of surety bonds normally utilized by banks and other institutions; nothing in either the legislative history or the implementing regulations supports the expansive reading plaintiffs would have the Court adopt.

The LMRDA requires union leaders to be bonded to protect the union against fraudulent and dishonest acts by those handling the union funds. Specifically, the LMRDA provides as follows:

> Every officer, agent, shop steward, or other representative or employee of any labor organization (other than a labor organization whose property and annual financial receipts do not exceed $5,000 in value), or of a trust in which a labor organization is interested, who handles funds or other property thereof shall be bonded *to provide protection against loss by reason of acts of fraud or dishonesty on his part directly or through connivance with others*.... Any person who is not covered by such bonds shall not be permitted to receive, handle, disburse, or otherwise exercise custody or control of the funds or other property of a labor organization or of a trust in which a labor organization is interested.

29 U.S.C. § 502(a) (emphasis supplied). The United States Department of Labor

issues regulations which implement the bonding requirements of the LMRDA. These Labor Department regulations delineate what is meant to be covered by the "fraud or dishonesty" terms of the Act:

> The term "fraud or dishonesty" shall be deemed to encompass all those risks of loss that might arise through dishonest or fraudulent acts in handling of funds as delineated in §§ 453.8 and 453.9. As such, the bond must provide recovery for loss occasioned by such acts ..., provided that within the law of the state in which the act is committed, a court would afford recovery under a bond providing protection against fraud or dishonesty. *As usually applied under state laws, the term "fraud or dishonesty" encompasses such matters as larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wrongful conversion, willful misapplication or any other fraudulent or dishonest acts resulting in financial loss.*

29 C.F.R. § 453.12 (emphasis supplied). Nothing, therefore, in the statute itself nor in its implementing regulations supports a broad reading of "fraud or dishonesty" to cover the actions of union leaders in engaging in a strike, even though the strike was illegal.

*Second,* the state law and state court interpretations of surety bonds referenced by the Labor Department regulations do not support plaintiffs' novel theory of recovery. Indeed, the plaintiffs cannot point to—nor was the Court able to find—any cases in the District of Columbia, or in any state, in which acts comparable to those complained of here have been held to trigger recovery under an surety bond.

*Third,* the acts the plaintiffs complain of are also not the type the parties to the bond agreement intended to be a part of that agreement. In the area of bonding as in other insurance areas, there must be a clear understanding of the parties as to coverage. There was no agreement that this type of activity would be covered. The union deliberately chose to be covered by a "fraud or dishonesty" bond, not by a broader bond for the faithful discharge of duty.

*See* Def.Br. at 45. In so doing, it limited the liability of the defendants to instances commonly contemplated within the meaning of "fraud or dishonesty." The actions complained of here simply do not fall within that definition.

*Fourth,* I find that there are compelling policy reasons for not reading this bond as plaintiffs suggest. Extending the definition of what is covered by LMRDA-required bonds might well make the costs of simple surety bonds prohibitive, thereby creating an atmosphere in which unions would not be able to get the kind of protection which is contemplated by the statute.

*Fifth,* I am also concerned that the prohibitive acts complained of in this case were not secretive and could not have been implemented without the acquiescence of a vast majority of the union membership. The union membership, which is the party to be protected by this bond, could have prevented the illegal strike if the members had so desired.

## IV. Conclusion

Plaintiffs did not file this case within the time limitations established in the bond contract. Further, they have been unable to support their contentions that they are entitled to collect under the union's surety bond. While I can appreciate the plaintiffs' plight following the disastrous consequences of this clearly misguided strike with which they disagreed, there is no legal basis on which to grant them the novel relief they seek in this action.