UNITED STATES of America, Plaintiff,
v.
Larry PHILLIPS, Luke Gravely, Clifford Mulbarger, Harry T. Johnson, Gloria Schneider, John Schmitt, and Arthur Stafford, Defendants.

No. 81 C 4371.

United States District Court,
N. D. Illinois, E. D.

Oct. 2, 1981.

Opinion After Evidentiary Hearing
Oct. 13, 1981.

William Coulson, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Michael A. Stiegel, Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This matter is presently before the Court on the defendants' motion to dismiss the government's petition for a rule to show cause why they should not be held in criminal contempt of this Court's order of August 3, 1981, enjoining the Professional Air Traffic Controllers Organization ("PATCO"), its officers, agents, members, and persons acting in concert with them from calling, participating in, or continuing a strike, work stoppage, or slowdown directed at the Federal Aviation Administration. In support of their motion to dismiss, the defendants, one regional PATCO officer and six officers of local PATCO affiliates, contend that they are the victims of selective prosecution aimed at punishing them for their exercise of their first amendment rights to become active officers in their union. As set forth below, the Court finds that the defendants have brought forth sufficient evidence in support of their selective prosecution claim to merit an evidentiary hearing at which the parties may fully air their respective positions. The Court will consider anew defendants' motion to dismiss at the conclusion of that hearing.

■ The United States Court of Appeals for the Seventh Circuit has recognized that "[t]he presumption is always that a prosecution for violation of a criminal law is undertaken in good faith and in a non-discriminatory fashion for the purpose of fulfilling a duty to bring violators to justice." *United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973). *See also United States v. Saade*, 652 F.2d 1126, 1135 (1st Cir. 1981). Nevertheless, a defendant may overcome this heavy presumption if he can establish *prima facie*

(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights[,]

*United States v. Saade, supra,* 652 F.2d at 1135; *United States v. Heilman,* 614 F.2d 1133, 1138 (7th Cir. 1980). The burden then shifts to the government to demonstrate that the prosecution was not premised upon an "invidious objective." *United States v. Saade, supra; United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir. 1974).

■ A defendant need not, however, present a *prima facie* case in order to be entitled to an evidentiary hearing on the question of selective prosecution. In *United States v. Falk*, the Seventh Circuit, in a rare *en banc* decision, held that "when a defendant alleges intentional purposeful discrimination and presents facts sufficient to raise a reasonable doubt about the prosecutor's purpose," the district court should conduct an evidentiary hearing in order to determine if the charge of selective prosecution has any merit. *United States v. Falk, supra,* 479 F.2d at 620–21.[1] The *en banc* majority in *Falk* ended its discussion of the factors that militated in favor of an

---

1. Phrased slightly differently, the First Circuit has held that "[s]o long as the defendant alleges some facts a) tending to show that he has been selectively prosecuted, and b) raising a reasonable doubt about the propriety of the prosecution's purpose [citations omitted], a district court, in the absence of countervailing reasons, should grant a request for a hearing." *United States v. Saade,* 652 F.2d 1126, 1135 (1st Cir. 1981).

evidentiary hearing in that case with an admonition that courts not simply defer to the principle of prosecutorial discretion without due consideration to the question of "whether selective enforcement in a given case is invidious discrimination which cannot be reconciled with the principles of equal protection." *United States v. Falk, supra*, 479 F.2d at 624.

■ In the case at bar, defendants maintain that they were intentionally selected for prosecution for criminal contempt by the government solely because they exercised their right to hold office in their labor union and not because of their alleged participation in the air traffic controllers' strike that began on August 3, 1981. They maintain that the government's prosecution of local and regional PATCO officers is for the purpose of breaking the air traffic controllers' union because the union has expressed views and taken actions contrary to those of the current administration. The government contends that defendants have not shown that other persons with actual knowledge of the terms of the restraining order and similarly situated to themselves have not been prosecuted or that they are being prosecuted because they engaged in protected first amendment activity rather than because of their alleged violation of the August 3, 1981, restraining order.

The government's argument that the defendants have not shown that similarly situated persons had actual knowledge of the terms of the temporary restraining order entered by this Court on August 3, 1981, or that the existence of these persons is not known to the government is disingenuous at best. During the civil contempt proceedings before this Court on August 5, 1981, the government argued that the temporary restraining order had been given the widest possible circulation in and around Federal Aviation Administration facilities frequented by the air traffic controllers within

hours of its issuance in an attempt to show that the defendants in the civil contempt proceedings had actual notice of the terms of the restraining order.[2] In addition to the defendants herein against whom the government now seeks criminal contempt sanctions, the prior civil contempt proceedings were brought against Mr. Richard Brandis and Mr. John Holic, neither of whom is a party to the instant petition. Moreover, the government has instituted criminal proceedings against at least three other air traffic controllers in the Northern District of Illinois for knowing participation in an unlawful strike. The criminal proceedings have apparently been dropped, however, and the three former criminal defendants are not charged in the pending petition for an order to show cause. Thus, the government itself has contended at various times that persons other than those before the Court at the present time have been put on actual notice that they were allegedly involved in unlawful activity in contravention of this Court's earlier order. It is pointless to argue at this late date that persons who the government has treated as being somewhat similarly situated to the instant defendants at various times in the past are being accorded similar treatment at the present time.

Moreover, the government has brought forth nothing other than the rather bold assertion of prosecutorial discretion in order to rebut the defendants' charges that they are being prosecuted for their union activity which is protected under the first amendment. The government's attempt to distinguish cases such as *United States v. Falk, supra*, involving the prosecution of anti-war protesters, from the instant case on the ground that those cases involved defendants who were prosecuted solely for engaging in practiced conduct misses the point at this early stage of these proceedings because the defendants in the instant action also claim

---

2. It is well settled that a person may be held in contempt of an injunction or temporary restraining order as long as he has actual knowledge of the terms of the decree whether or not he has been personally served with the court's order. *See Ex parte Lennon*, 166 U.S. 548, 17

S.Ct. 658, 660, 41 L.Ed. 1110 (1897); *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 129 (2d Cir. 1979); *Shakman v. Democratic Organization of Cook County*, 533 F.2d 344 (7th Cir. 1976).

**4**

that they are being prosecuted solely for engaging in protected conduct. The fact that defendants are all officers of PATCO either on the regional or local level and that the government has not sought criminal contempt sanctions against anyone but PATCO officers despite past assertions and prosecutions to the effect that other PATCO members have knowingly violated this Court's orders lends at least some credence to the defendants' selective prosecution claim in the absence of any rebutting evidence. In *United States v. Saade, supra,* the court found similar allegations to the effect that the government had only initiated prosecutions against the officers of an activist organization in order to halt further political action and to punish them for past political activity sufficient to warrant further inquiry in the context of a full evidentiary hearing.

This is not to say that the defendants in the instant matter will ultimately prevail on their motion to dismiss on the ground of selective prosecution. The government will have the opportunity to bring forth evidence of any legitimate, nondiscriminatory reasons that might exist to justify the prosecution of only PATCO officers, such as to achieve maximum deterrent effect, *see United States v. Catlett,* 584 F.2d 864, 867–68 (8th Cir. 1978), or because prosecution of the most vocal offenders might be the most administratively and practically efficient way to proceed, *see United States v. Warinner,* 607 F.2d 210, 214 (8th Cir. 1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1313, 63

L.Ed.2d 760 (1980). In the interest of allowing the parties to fully develop their respective positions, however, the Court deems it advisable to conduct an evidentiary hearing before resolving the merits of defendants' motion.

Accordingly, this Court will conduct the hearing contemplated by this order on October 6, 1981, at 10:00 a. m.* It is so ordered.

### OPINION AFTER EVIDENTIARY HEARING

■ This matter is presently before the Court on the defendants' motion to dismiss the government's petition for a rule to show cause as to why they should not be held in criminal contempt of this Court's order of August 3, 1981, enjoining the Professional Air Traffic Controllers Organization ("PATCO"), its officers, agents, members, and persons acting in concert with them from calling, participating in, or continuing a strike, work stoppage, or slowdown directed at the Federal Aviation Administration ("FAA"). In support of their motion, defendants, one regional PATCO officer and six officers of local PATCO affiliates, contend that they are the victims of selective prosecution aimed at punishing them for exercise of their first amendment rights to become officers of their union in contravention of principles of due process and equal protection embodied in the Fifth Amendment to the United States Constitution.

An evidentiary hearing was held on defendant's motion on October 6, 1981.[1] Af-

---

* The government's motion to modify the discovery order entered by Magistrate Jurco on September 30, 1981, is granted. The government will not be required to produce the items listed in paragraphs (b) and (c) of the defendants' motion for sanctions and discovery provided that the government stipulates to the foundation for any newspaper reports or public statements of which the defense is aware.

The defendants' motion to modify Magistrate Jurco's order of September 30, 1981, will be granted to the extent that it seeks to compel production of all documentation reflecting, referring or in any way pertaining to the basis for the decision to prosecute the defendants and the decision not to prosecute other persons (paragraph (e)(3) of defendants' motion for

sanctions and discovery). The defendants' motion to modify will be denied in all other respects.

The government will comply with this discovery order *forthwith* in order that the October 6 evidentiary hearing may proceed as scheduled. It is so ordered.

1. In an earlier opinion and order, this Court held that the defendants' allegations of intentional discrimination and the facts brought forth in support of the allegations were serious enough to warrant an evidentiary hearing. *United States v. Saade,* 652 F.2d 1126 (1st Cir. 1981); *United States v. Falk,* 496 F.2d 616 (7th Cir. 1973). *See* supra, p. 2.

ter hearing the testimony and reviewing the evidence presented at the hearing,[2] the Court concludes that the government has sufficiently rebutted defendants' allegations of selective prosecution with legitimate, nondiscriminatory reasons for its prosecution of the instant petition for a rule to show cause. Accordingly, for the reasons set forth below, defendants' motion to dismiss the petition must be denied.

The United States Court of Appeals for the Seventh Circuit has recognized that "[t]he presumption is always that a prosecution for violation of a criminal law is undertaken in good faith and in a non-discriminatory fashion for the purpose of fulfilling a duty to bring violators to justice." *United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973). *See also Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505–06, 7 L.Ed.2d 446 (1962); *United States v. Saade*, 652 F.2d 1126, 1135 (1st Cir. 1981). Nevertheless, a defendant may overcome this heavy presumption if he can establish *prima facie*

(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights[,]

*United States v. Saade, supra*, 652 F.2d at 1135; *United States v. Heilman*, 614 F.2d 1133, 1138 (7th Cir. 1980). The burden then shifts to the government to demonstrate that the prosecution was not premised upon an "invidious objective." *United States v. Saade, supra; United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974).

In the case at bar, defendants maintain that the government intentionally selected them for prosecution for criminal contempt solely because they exercised their first amendment right to seek and hold office in their labor union and not because of their alleged participation, along with hundreds of other air traffic controllers in the Chicago area, in the air traffic controllers' strike that began on August 3, 1981, and continued thereafter in violation of the temporary restraining order issued by this Court on that date. They maintain that the government has initiated these prosecutions of local and regional PATCO officers for the purpose of breaking the air traffic controllers' union because the union has expressed views and taken actions contrary to those of the current national administration. The government contends that defendants have not shown that others similarly situated to themselves have not been prosecuted for criminal contempt or that they are being prosecuted in bad faith because they engaged in protected first amendment activity rather than because of their alleged violation of the August 3, 1981, temporary restraining order.

If this were a civil contempt proceeding, there would be no question of selective prosecution. The purpose of civil contempt is to coerce compliance with a court order, *see, e. g., Shakman v. Democratic Organization of Cook County*, 533 F.2d 344, 349 (7th Cir. 1976) and cases cited therein, and it is logical to assume that the union officers would be in the best position to exercise their influence and authority to encourage the rank and file union membership to comply with the terms of a temporary restraining order. Counsel for defendants conceded as much during the evidentiary hearing herein. Indeed, no question of selective prosecution was raised during earlier civil contempt proceedings in this matter involving the defendant union officers now before the Court.

---

2. The government's only witness at the hearing was Acting United States Attorney for the Northern District of Illinois Dan Webb who testified regarding his decision to institute criminal contempt proceedings against these defendants pursuant to 18 U.S.C. § 401(3). Defendants' counsel extensively cross-examined Webb, but did not put on any defense witnesses. Counsel for both sides then orally argued the merits of the motion before the Court based upon the evidence adduced at the hearing.

**6**

Similarly, if the government could show that the basis for prosecuting the defendant union officers for criminal contempt was that they were intimately involved in a coordinated scheme or conspiracy of civil disobedience in which they actively directed or orchestrated the actions of the union membership to violate this Court's order, there would be no question of selective prosecution. Courts have held that the government may focus upon the most active or vocal offenders and not run the risk of having the prosecution dismissed on the ground of unfair selectivity. *United States v. Rickman*, 638 F.2d 182 (10th Cir. 1980); *United States v. Warinner*, 607 F.2d 210 (8th Cir. 1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1313, 63 L.Ed.2d 760 (1980); *United States v. Catlett*, 584 F.2d 864 (8th Cir. 1978). *But see United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972). Defendants concede this much as well; however, there has been no showing in this case that the conduct of the officers in allegedly participating in an illegal strike in violation of the order of this Court is any different than the conduct of the rank and file union membership. Standing alone then, the fact that the government chose to prosecute only PATCO officers for criminal contempt, without any allegation that their conduct was different than that of the nonofficer PATCO members who also allegedly participated in the strike after the issuance of the temporary restraining order, provides an impetus for further inquiry into the government's motivations in instituting these prosecutions.

The focus of this Court's inquiry must be the government's decision to initiate the instant petition for a rule to show cause. Thus, if at that time there was a reasonable basis upon which to differentiate the defendant union officers from the rank and file union membership and it could be shown that the government did not act in bad faith in so differentiating them, then defendants' charges of selective prosecution must fail.

The government maintains that, in the context of these criminal contempt proceedings, the defendant union officers are not similarly situated to the rank and file union membership because the officers alone received personal or abode service [3] of the temporary restraining order issued by this Court on August 3, 1981, which order they are charged with wilfully disobeying. The fact of personal service or its equivalent is important in the context of criminal contempt because in order to successfully prosecute someone for criminal contempt of a court order the government must show that the defendant had actual knowledge of the terms of the order and that he or she wilfully disobeyed it. *Douglass v. First National Realty Corporation*, 543 F.2d 894, 897 (D.C.Cir.1976); *United States v. Greyhound Corp*, 508 F.2d 529 (7th Cir. 1974); *Yates v. United States*, 316 F.2d 718 (10th Cir. 1963). At the evidentiary hearing on October 6, 1981, Dan Webb, Acting United States Attorney for the Northern District of Illinois, testified that, in his opinion, it would be necessary to show that the defendant had been personally served, or the equivalent, with the temporary restraining order in order to meet the government's burden of proving each element of the criminal contempt charge beyond a reasonable doubt. This, Webb contends, necessarily limited the number of potential defendants to those who had been named as defendants when the government initially filed its civil complaint for a temporary restraining order on August 3, 1981.[4] We agree.

---

3. The Federal Rules of Civil Procedure define personal service as either service upon the individual or upon a "person of suitable age and discretion" then residing at the individual's dwelling house or usual place of abode. Fed.R. Civ.P. 4(d)(1).

4. Nine union officials were named as defendants in the government's original complaint. Seven of the original nine defendants are named in the petition to show cause why they should not be held in criminal contempt. The two union officers not named in the contempt petition were scheduled for a day off on August 4, 1981, the day immediately following the issuance of the temporary restraining order enjoining the air traffic controllers' strike, according to Webb. President Reagan fired the striking controllers on August 5, 1981, so that it was impossible for them to return to work thereafter if they had participated in the strike. Webb

■ While personal service of a court order is not generally required in order to support a finding of civil contempt for disobeying the order, see, e. g., *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 129 (2d Cir. 1979), personal service or its equivalent is frequently required in the criminal contempt context. Thus, the United States Court of Appeals for the Sixth Circuit has held that in order for a court's order to be subject to enforcement in a criminal contempt proceeding, it normally must be "... a written order issued by the court and *personally served upon the alleged contemner." In re LaMarre*, 494 F.2d 753, 758 (6th Cir. 1974) (emphasis supplied). The court went on to say that a defendant in a criminal contempt proceeding also may have sufficient knowledge of the order he is charged with disobeying if it was "entered in open court in the presence of the person concerned or with his knowledge clearly proved." *Id.* In *LaMarre*, the court of appeals reversed the trial court's judgment of criminal contempt against a defendant who failed to obey the trial court's order that he appear in open court at a specified time on the ground that the defendant did not have the requisite knowledge of the court's order to appear, which had not been personally served upon him or entered in his presence although the trial judge's oral order had been twice relayed to the defendant through his counsel. *See also Green v. United States*, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); *Douglass v. First National Realty Corp.*, 543 F.2d 894, 897, and 897 n. 16 (D.C. Cir. 1976); *United States v. Hall*, 472 F.2d 261, 263 (5th Cir. 1972) (personal service important element of proof in criminal contempt context).

We would not hesitate to reject the government's proffered rationale for distinguishing the union officers from the rank and file on the basis of the officers' receipt of personal or abode service of the temporary restraining order if it could be established that the government had some invidious motive in naming the union officers as defendants at the time the initial complaint was filed on August 3, 1981. For example, if it were shown that the government, in contemplation of filing the instant petition for a rule to show cause, served personally only the union officers, in order to be able to argue later that these were the sole proper defendants to proceed against by criminal contempt because they were the only ones who were personally served with the temporary restraining order, we would reject the government's rationale as a bootstrap argument intended to mask a calculated plan for selective prosecution. But, after hearing the testimony and reviewing the evidence presented herein, that does not appear to be the chronology of events in this case. Rather, it is clear that the government had legitimate reasons for initially naming only the union officials in the complaint upon which the temporary restraining order was predicated. At that time, the government's goal was to force the air traffic controllers to resume their duties at the nation's air terminals. It therefore was reasonable to name as defendants the union officers who were in a position of authority and who presumably had the power to order the union membership back to work. When the temporary restraining order failed to accomplish its purpose, the government petitioned to hold the union officers in civil contempt. As discussed earlier, it is not unreasonable to single out the union officers in the context of a civil contempt proceeding since the very purpose of the civil contempt sanction is to coerce the parties named in the temporary restraining order to comply with its

testified that it was "his view"—perhaps, derived in part from an earlier ruling of this Court rejecting a dramatically opposite legal position of the government—that defendants could not be held accountable for post-filing failure to report to work. Webb further testified that, in his judgment, it would be difficult to prove beyond a reasonable doubt that the two union

officers scheduled for leave on August 4 had wilfully disobeyed this Court's order by not showing up for work on that day. Therefore, Webb only sought the criminal contempt sanction with regard to those persons who had been personally served with the Court's order and who, in his view, did not have an adequate excuse for their failure to obey the order.

terms.[5] The government simultaneously proceeded against some air traffic controllers, including some of the defendants herein, for the felony of participating in an illegal strike pursuant to 18 U.S.C. § 1918. It was only after President Reagan fired the striking air traffic controllers, an event that could not have been anticipated—and which the government lawyers clearly did not anticipate—at the beginning of this ordeal, that the government switched its approach and decided to proceed against the union officers by way of criminal contempt.

Thus, the Court is convinced that the existence of legitimate reasons for singling out the union officers as defendants in the original complaint coupled with the haphazard[6] way in which the government has proceeded with regard to the air traffic controllers' strike adequately dispels any notion that the government acted in bad faith in prosecuting the defendants for criminal contempt based upon their being the only persons who were personally served with a copy of the temporary restraining order. The fact that the defendant union officers were the only persons who were actually served with the Court's order sufficiently distinguishes them from the rank and file union membership who were not prosecuted since, in the criminal contempt context, the defendants' actual knowledge of the terms of the order they are charged with disobeying is an important element of the crime that must be proved beyond a reasonable doubt. Simply stated, the test is whether the government, *at the time it determined to proceed by way of criminal contempt*, acted in a manner to selectively prosecute the defendants. For the reasons stated herein, the government did not so act. Earlier governmental conduct *at the time it filed the instant complaint and personally served the defendants* is relevant as to the issue of selective prosecution only if this earlier conduct was clearly contemplated by the government as a method of enabling it to eventually selectively prosecute the defendants. Again, the

---

5. Moreover, as a practical matter, it was impossible under the attendant time constraints to obtain personal service on the hundreds of union members subject to the initial temporary restraining order.

6. Although the government had legitimate reasons for initially naming only the union officers in the civil complaint for a temporary restraining order, this does not alter the fact that the government has proceeded at times in a somewhat directionless manner during the entire course of this litigation. Ironically, the arguably erratic manner in which the government has proceeded lends credence to the argument that there is no invidious connection between the initial decision to name only the union officers in the civil complaint and the subsequent decision to institute the instant petition as to criminal contempt with respect to the union officers who alone received personal service of the temporary restraining order by reason of their being named in the civil complaint.

For example, when it became apparent that the air traffic controllers were not going to abide by the terms of the temporary restraining order issued by this Court on August 3, 1981, the government sought to hold the union officers in civil contempt. Soon thereafter, the government instituted felony charges against some air traffic controllers for allegedly participating in a strike against the federal government in violation of 18 U.S.C. § 1918. Although President Reagan a day or two after the civil contempt charges were brought, decided to fire the controllers who were participating in the strike, the government persevered in its effort to hold the controllers in civil contempt. At that time, the government represented to the Court that the FAA would reinstate any controller who wished to return to work in compliance with the Court's order and argued that the President's decision to dismiss the striking controllers had nothing to do with the pending civil contempt proceedings. The government subsequently decided not to oppose the defendants' motion to vacate the civil contempt citations, however, admitting that it was inherently inconsistent to hold the controllers in civil contempt when it had become apparent that it was impossible for them to return to work in compliance with the terms of the temporary restraining order. Approximately two months after the civil contempt citations were vacated, the government also dismissed the felony charges and petitioned for a rule to show cause seeking to hold the union officers in criminal contempt for the brief period between the commencement of the controllers' strike and President Reagan's decision to fire the striking controllers. Thus, the effort to hold the union officers in criminal contempt is the latest—and perhaps the definitive—legal maneuver in the government's attempt to deal with the air traffic controllers' strike in proceedings before this Court.

record herein indicates that such was not the case.

Accordingly, since there has been no showing that the defendants were invidiously singled out for prosecution by the government in bad faith based upon the impermissible criteria that they had exercised their first amendment right to seek and hold office in their union, the motion to dismiss the petition for a rule to show cause is denied. This cause will be set for hearing on the merits October 21, 1981, at 10:00 a.m.[7] It is so ordered.

7. During the hearing on this motion, it was indicated that one or two defendants were not scheduled to work during the time period when the temporary restraining order was viable. Mr. Webb further indicated that if such were the case, he would not proceed by way of criminal contempt against these individuals. We assume that an appropriate motion to dismiss will be made by the government before the October 21 hearing if the facts so warrant.