UNITED STATES of America, Plaintiff,

v.

**Larry PHILLIPS, Luke Gravely, Clifford Mulbarger, Harry T. Johnson, Gloria Schneider, John Schmitt, and Arthur Stafford, Defendants.**

No. 81 C 4371.

United States District Court,
N. D. Illinois, E. D.

Nov. 16, 1981.

**1362**

Fred Branding, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Michael A. Stiegel, Arnstein, Gluck & Lehr, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This matter is presently before the Court on the government's motion to have certain defendants [1] held in criminal contempt of this Court's order of August 3, 1981, enjoining the Professional Air Traffic Controllers Organization ("PATCO") and PATCO Local 316, its officers, agents, members, persons acting in concert with them, and any and all Federal Aviation Administration employees from calling, participating in, or continuing a strike, work stoppage, or slowdown directed at the Federal Aviation Administration

("FAA"). As a threshold matter, defendant Larry Phillips ("Phillips"), PATCO's vice-president for the Great Lakes Region, has moved to dismiss the instant charges as to himself for alleged prosecutorial misconduct in bringing these charges locally when he is also a defendant in the suit brought by the government in Washington, D. C. against the national union and its executive board. For the reasons set forth below, Phillips' motion will be granted, and the remaining defendants will be adjudged in criminal contempt of this Court for their wilful violation of the temporary restraining order entered on August 3, 1981, and served upon them on that date.

The basis of Phillips' motion to dismiss is that the government, by seeking to hold him in criminal contempt of this Court's order, has acted contrary to its representations before Judge Harold Greene of the United States District Court for the District of Columbia to the effect that the government would not proceed against the national union or against members of the national executive board [2] in actions other than the one pending in the District of Columbia. From the time that PATCO reached an impasse with the FAA precipitating the air traffic controllers' strike on August 3, 1981, and the government launched its lawsuits in the District of Columbia as well as in jurisdictions all over the country, this Court was concerned about the possible duplication of defendants who could be subject to multiple civil and criminal sanctions as a consequence of their being named as defendants in several suits involving the same or similar issues and conduct. Judge Greene apparently shared this concern and sought

1. By memorandum opinion and order dated October 13, 1981, this Court denied defendants' motion to dismiss the government's motion for a rule to show cause why they should not be held in criminal contempt. 525 F.Supp. 1. Those defendants charged with criminal contempt at the present time include Larry Phillips, Clifford Mulbarger, Harry T. Johnson, John Schmitt, and Arthur Stafford. Charges against two defendants, Luke Gravely and Gloria Schneider, were dismissed by the Court at the conclusion of the government's presenta-

tion of its case during the hearing on this matter held on October 27, 1981.

2. In his capacity as vice-president of PATCO's Great Lakes Region, Phillips is a member of the national executive board and is named as an individual defendant in *United States v. Professional Air Traffic Controllers Organization*, —— F.Supp. —— currently pending in the United States District Court for the District of Columbia.

assurances from the government that it would not "pile up these actions against PATCO all over the country." *See* Transcript of Hearing on Order to Show Cause before Judge Greene on August 10, 1981, at 31. In colloquy with counsel for the government during a hearing held on August 10, 1981, Judge Greene requested and received assurance that the government would not proceed against the national union officers in actions against local PATCO affiliates and officers, with particular reference to the action pending in this Court:

> THE COURT: The government advised me last week when you were here for the contempt hearing that they would not seek actions against the national union in other districts, *at least with respect to Chicago.* That seems to have been untrue and I would like before this hearing is over an explanation as to why that was done in spite of the assurance made to this Court.

> \*    \*    \*    \*    \*    \*

> MR. LINDER: The situation is, Your Honor, we in fact did bring a number of actions against PATCO locals and local officers and members. We did name the national union. *We did not name Mr. Poli or any of the other members of the executive board.* The TRO's we obtained did run against PATCO but also ran primarily against the locals and local members and officers. Wherever civil contempt was sought in those jurisdictions it is my understanding it was never sought and the policy of the department is not to seek it against PATCO nationally.

Transcript of Hearing before Judge Greene on August 10, 1981, at 29–30 (emphasis added).

It now appears that the government—whether intending to do so or not—may have misrepresented the situation to Judge Greene in Washington, D. C. Phillips, a

national officer of PATCO and a member of the executive board, was named in the action filed in the Northern District of Illinois against PATCO Locals 316 and 301 and their respective officers. In previous hearings before this Court bearing on the question of selective prosecution, the government maintained that the sole reason that Phillips and the others were being charged with criminal contempt was that they all had been personally served with a copy of the Court's order by virtue of their status as named defendants in this lawsuit. In effect, the government now seeks to have Phillips held in criminal contempt of an order with which he would not have been served if the government had proceeded consistent with its position as articulated before Judge Greene on August 10, 1981. In the Court's view, such a result would be fundamentally unfair. At some point the government must be estopped to proceed in a way that is perfectly inconsistent[3] with the position it has publicly indicated that it would pursue. That point, at least with respect to Phillips, is now.

██ In the context of the case at bar, the government maintains that the United States Attorney for the Northern District of Illinois retains the discretion to prosecute whomever he chooses for criminal contempt. But it is also plain that had the government followed its policy as represented to Judge Greene, Phillips would not be a named defendant in this case, would not have been served with a copy of the complaint or the temporary restraining order, and would not be a proper defendant for purposes of criminal contempt under the government's own standard for choosing whom to proceed against in these proceedings. The United States Court of Appeals for the Seventh Circuit has stated that "in cases wherein prosecutorial misconduct is alleged [the test] is simply whether the

---

3. The Court notes that the government's prosecution of this case from its inception before *this* Court has not been a model of consistency, even considering the rather fast pace that has characterized this litigation. The various re-

verses in positions that have plagued this case have been chronicled elsewhere and need not be repeated here. *See United States v. Phillips*, 525 F.Supp. 1 at 8 n.6 (N.D.Ill.,1981).

accused was insured of and accorded the genuine fairness to which he was entitled. . . ." *United States v. Marrero*, 516 F.2d 12, 15–16 (7th Cir. 1975), cert. denied, 423 U.S. 862, 96 S.Ct. 120, 46 L.Ed.2d 90 (1976). In the instant case, the Court finds that it would be fundamentally unfair[4] to permit the government to continue to press its criminal contempt charge against Phillips locally in light of the representations made by the government in proceedings before Judge Greene in Washington, D. C., to the effect that such charges would not be brought.[5] Accordingly, Phillips' motion will be granted, and he will be dismissed from these contempt proceedings. We therefore proceed to a discussion of the charges against the remaining defendants.

■ In order to mount a successful prosecution for criminal contempt, the government must prove that the defendant had actual knowledge of a specific court order and that he or she wilfully disobeyed its terms. *Douglass v. First National Realty Corporation*, 543 F.2d 894, 897 (D.C.Cir. 1976); *United States v. Greyhound Corporation*, 508 F.2d 529 (7th Cir. 1974); *Yates v. United States*, 316 F.2d 718 (10th Cir. 1963). Defendants contend that the government has failed to prove both of these elements. We disagree. On the basis of the evidence adduced at the hearing in this matter held on October 27, 1981, the Court is satisfied that the government has proved each of the elements necessary for a finding of criminal contempt beyond a reasonable doubt with respect to defendants Harry T. Johnson ("Johnson"), John Schmitt ("Schmitt"), Arthur Stafford ("Stafford"), and Clifford Mulbarger ("Mulbarger"), all of whom were air traffic controllers assigned to either O'Hare Airport or the Aurora Air Route Traffic Control Center prior to August 5, 1981.

On August 3, 1981, United States District Court Judge Milton I. Shadur, acting in our absence, issued a temporary restraining order which, in effect, directed that the air traffic controllers cease their illegal strike begun that day and return to work *immediately*. The record shows that a copy of the Court's order was served upon Schmitt's wife at their residence at approximately 3:15 p. m. on August 3, 1981; that Johnson's wife was served at their residence at approximately 4:00 p. m. on that date; that Stafford's wife was served at their residence at approximately 4:35 p. m. on that

---

4. The government maintains that the assurances given to Judge Greene on August 10, 1981, only related to civil contempt, not to criminal contempt. In our view, however, the government's position must be interpreted as encompassing criminal as well as civil contempt proceedings. The logic of the government's position as represented to Judge Greene is not so limited, and we decline to engraft such a limitation in order to allow the government to proceed against Phillips in this action when it expressly represented that persons in his position would not be prosecuted in local actions initially and, by implication, in collateral contempt proceedings.

In the Court's view, the government must be held to a higher standard of conduct than that applicable to a private litigant, especially in the context of a criminal or quasi-criminal prosecution. Thus, as the United States Supreme Court stated in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935):

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

*See also United States v. Bess*, 593 F.2d 749, 754 (6th Cir. 1979) ("Unequivocally, the Government has the obligation to fully comply with any and all agreements and promises it makes with and to defendants and we would interpret any non-compliance as a serious breach of the Government's duty, as well as a *possible violation of a defendant's constitutional due process rights.*").

5. A situation similar to that in the instant case arose in Atlanta, Georgia, when PATCO vice-president Dave Segal was prosecuted for criminal contempt despite the fact that he was a national officer and member of the PATCO executive board. In Atlanta, however, the United States Attorney apparently dropped the contempt charges against Segal when he was advised of the representations that had been made before Judge Greene.

date; and that Mulbarger's sister was served at his residence at approximately 3:50 p. m. on that date. The record also shows that Schmitt was scheduled to work the 7:00 a. m. to 3:00 p. m. shift on August 3, 4, and 5, 1981, but that he failed to report to work on those days; that Stafford was scheduled to work the 3:00 p. m. to 11:00 p. m. shift on August 3, 1981, the 7:00 a. m. to 3:00 p. m. shift on August 4, 1981, and the 1:00 p. m. to 9:00 p. m. shift on August 5, 1981, but that he failed to report to work on those days; that Johnson was scheduled to work the 3:00 p. m. to 11:00 p. m. shift on August 3, 4, and 5, 1981, but that he did not report to work on those days; and that Mulbarger was on temporary assignment at the Oshkosh, Wisconsin, airport on August 4 and 5, 1981, where he was scheduled to work the 11:00 a. m. to 9:00 p. m. shift, but that he failed to report to work on those days.[6] None of the defendants was on a leave of absence or had any other justification for failure to report for work during this period. The defendants were fired on August 5, 1981, in accordance with President Reagan's statement that any controller who did not return to work by his or her first scheduled shift on August 5 would no longer have a job with the FAA.

■ Defendants' argument that they had no actual knowledge or notice of the Court's order defies credulity. The defendants are all reasonably intelligent professionals who were officers of their respective local unions during a period of intense confrontation between the union and their employer, the FAA, in the national political arena, in the local and national media, and before this Court. The Court's order was served upon each of the defendants by leaving a copy with their wives or, in one case, with the defendant's sister, at their respective residences.[7] The Court may also take judicial notice of the large amount of publicity given the temporary restraining order in the print and broadcast media almost immediately after it was issued on August 3, 1981. In sum, the Court may reasonably conclude that the defendants either personally saw the Court's order or were sufficiently aware of the purport of the order so that actual knowledge or notice of the terms of the order directing them to return to work immediately may be imputed to them.[8]

■ Defendants' contention that they did not wilfully disobey the Court's order or, more specifically, that they were lulled into contempt by President Reagan's statement on August 3, 1981, is equally without merit. While it is true that President Reagan stat-

---

6. Mulbarger was scheduled for a day off on August 3, 1981.

7. The defendants maintain that the order was not personally served upon them in accordance with Fed.R.Civ.P. 4(c) since service was accomplished by FAA security personnel who had not been appointed by the Court as special process servers. However, Rule 4 governs the manner of service of process for the purpose of obtaining personal jurisdiction over a party. In the instant case, defendants do not challenge the existence of personal jurisdiction or the manner of service for that purpose. While the manner of service is one factor to be considered in determining whether a defendant has sufficient knowledge of the terms of a court order so as to render him guilty of criminal contempt, the touchstone is still actual knowledge and, to that extent, the technical requirements of Rule 4 are of little guidance.

8. The only defendant who was not living at his usual residence at the time the order was served was Mulbarger who was temporarily assigned to an airport in Oshkosh, Wisconsin, for an air show. However, Mulbarger's sister testified that when she received the court papers on August 3, 1981, she called Mulbarger in Oshkosh to tell him that the documents had been served, and she read to him from the first page of one of the documents, though she could not recall which document she read. As the court noted in *Douglass v. First National Realty Corporation*, 543 F.2d 894, 897 n.15 (D.C.Cir. 1976), "[i]f appellant was aware of the purport of the order to show cause, it matters not that he had not actually seen the posted copy." The Court is convinced beyond a reasonable doubt that Mulbarger was aware of the purport of the papers served upon him by virtue of his sister's phone call and explanation of the documents, his position as a union officer during a period of intense union activity, and the substantial amount of publicity given to the Court's order. The totality of the circumstances placed a duty to respond to the Court's order upon Mulbarger as well as the other defendants.

ed on the morning of August 3 that the air traffic controllers would be fired if they did not return to work by August 5, 1981,[9] that statement did not purport to alter this Court's order directing the controllers to return to work immediately. By giving the striking controllers 48 hours in which to return to work or permanently lose their jobs, the President did not imply that the controllers did not have to comply with the Court's order that they return to work immediately. The clear import of the President's statement, by its terms and in the context in which it was made, was that the controllers were to return to work immediately, but if they did not do so, they would not in any event have a job to return to after August 5, 1981. The President did not state or imply that his grace period was intended to or did modify any existing or future court orders, and it is unreasonable to assume that his statement had that effect, particularly when defendants were served with copies of this Court's unambiguous order which carried with it a duty to obey its terms.

Indeed, the President was without any authority to vacate or modify in any way the temporary restraining order issued by this Court and defendants, who have been advised by able counsel throughout the course of this litigation, must be charged with this knowledge. They simply chose to ignore the temporary restraining order. Moreover, the defendants chose to ignore the President's offer to return to work as well, thereby defeating their argument that they were somehow lulled into contempt because they relied on the President's statement that they could return to work by August 5, 1981.

Accordingly, for the reasons set forth above, Phillips' motion to dismiss is granted

and the remaining defendants are adjudged in criminal contempt of this Court. The Court will order that a presentence investigation be conducted with respect to defendants Schmitt, Johnson, Mulbarger, and Stafford,[10] and the defendants are to appear in open court on January 7, 1982, for sentencing. It is so ordered.

---

9. The President's original statement gave the striking controllers 48 hours from 10:00 a. m. EST on August 3, 1981, to report to work in order to save their jobs. The period was later modified so that the controllers had until their first regularly-scheduled shift on August 5, 1981, to return to work and save their jobs.

10. These defendants are to report to Deputy Clerk of the Court Mark Tortorici on November 18, 1981, at 9:00 A.M. at Room 1938, 219 South Dearborn Street, Chicago, Illinois 60604, in order to be processed for presentence investigation.